Chief Judge Fuld.
Dow Chemical and Dow Chemical International (respondents herein) are entitled to arbitration under the Federal Arbitration Act (F.A.A.). Under that statute, since there is a valid arbitration agreement, all other issues, including the issue of time limitations, are for the arbitrators and not the court.
The underlying controversy between the parties — arising as it does from a charter party, a maritime contract—is solely Federal in character and governed exclusively by Federal substantive law. This being so, the petitioner-appellant should not be permitted to come into our State courts and here institute a proceeding to enjoin enforcement of the arbitration provisions contained in the contract, on grounds coneededly unavailable under Federal law. This consideration, in and of itself, is sufficient to dispose of the appeal and to require an affirmance.
However, we turn, first, to the question whether or not we are required by Prima Paint v. Flood & Conklin (388 U. S. 395) to apply the Federal Arbitration Act (U. S. Code, tit. 9) in deciding this case. We are inclined to the view that in a case such as the present—involving as it does a maritime transaction—Prima Paint leaves no plausible alternative but appli *580 cation of the Federal statute in state courts as well as in Federal courts.
It is particularly important to apply Federal law in the present case, for, to hold otherwise would (1) permit, indeed encourage, forum shopping; (2) prevent and undermine the need for nationwide uniformity in the interpretation and application of arbitration clauses in foreign and interstate transactions; and (3) permit individuals to circumvent the national law relating to arbitration agreements as called for by the F.A.A.
The charter party, from which the present controversy stems, contains an exceedingly broad arbitration clause in which the parties agreed to submit all of the questions arising out of the contract to arbitration in New York[1]. Accordingly, when agreement could not be reached, the respondents demanded arbitration. The appellant, although it recognized and acknowledged that the rights under the charter party are governed by Federal law, came into our State court and moved to stay the arbitration-— pursuant to. CPLR 7502 (subd. [b])—on the ground that the disputes are time barred under the Federal Carriage of Goods by Sea Act (U. S. Code, tit. 46, § 1303, subd. [6]). In opposing the application, respondents claimed that, since the disputes arise from a maritime contract, the F.A.A. governs and that, under that statute, once the arbitration clause itself is found to be valid, all questions, including that having to do with a time limitation, must be left to the arbitrators for ultimate decision.
Both courts below, noting that the agreement and its provision for arbitration are governed by Federal law, held that the F.A.A. controls and that, under that statute, a time limitation may not be invoked to prevent arbitration. The appellant asks us to reach a contrary conclusion, primarily because it believes that the Supreme Court in its opinion (per Fobtas, J.) in Prima Paint (388 U. S. 395, supra) required that the F.A.A. be applied only in the Federal courts.
*581 The arbitration clause with which we are concerned is in a maritime charter party and it is important to emphasize, at the outset, that it is Federal 'substantive law exclusively which controls such an agreement. The Federal Judiciary Act vests the district courts of the United States with original jurisdiction over all admiralty and maritime cases (U. S. Code, tit. 28, § 1333). Although it provides that suitors may also pursue their remedies in the state courts, it is settled that, despite this grant of concurrent jurisdiction, the state courts are bound to apply Federal law in such disputes in order to secure a single and uniform body of maritime law. (See, e.g., Detroit Trust Co. v. The Barlum, 293 U. S. 21, 43; Garrett v. Moore-McCormack Co., 317 U. S. 239, 244-246; Romero v. International Term. Co., 358 U. S. 354.) In other words, although the saving clause in the statute permits actions under Federal maritime law to be brought in any state court, it cannot limit the substantive rights of parties, nor, it seems, can it apply its own rules of procedures if those rules would significantly affect the result of the litigation, i.e., would be outcome determinative. (See Garrett v. Moore-McCormack Co., 317 U. S. 239, 246-249, supra, Guaranty Trust Co. v. York, 326 U. S. 99, 109; see, also, Hill, State FELA Actions, 17 Ohio St. L. J. 384.)
The appellant takes the position that CPLR 7502 (subd. [b])—which permits a court to stay arbitration if the dispute is barred by a limitation of time—does not substantially alter any federally created substantive rights. Its argument is premised upon the assumption .that arbitration is a mere procedural device and that any court is free to prevent enforcement of an arbitration clause according to the particular law of the forum. This is refuted by section 2 of the F.A.A. itself, which provides that a written provision for arbitration “ in any maritime transaction or a contract evidencing a transaction involving commerce * * * shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.” Here, in unmistakable language, is evidence of the Congressional design that the arbitration clause in a maritime contract accords a Federal right to arbitration as a matter of Federal law, wholly part from any provisions of the CPLR. (Cf. Red Cross Line v. Atlantic Fruit Co., 264 U. S. 109,122-123.) Quite obviously, a state court which *582 prevents arbitration on a ground not recognized under Federal law denies the full measure of enforceability provided for by the F.A.A. to arbitration clauses in maritime agreements.
Of course, if this were a contract involving a local transaction governed exclusively by New York law, and not a maritime contract, then, provisions such as CFLR 7502 (subd. [b]) would be available to stay arbitration even if the dispute arose in the Federal courts. (See Bernhardt v. Polygraphic Co., 350 U. S. 198.) The rationale underlying the decision in the Bernhardt case is that, regardless of whether a question under state arbitration law is classified by the state .court as ‘ ‘ substantive ’ ’ or “procedural,” the Federal courts are to apply state arbitration law because — since it may significantly affect the result of the litigation—it is outcome determinative. (See Guaranty Trust Co. v. York, 326 U. S. 99, 109-110, supra; cf. Hanna v. Plumer, 380 U. S. 460, 466-469.) [2]
The difficult question arises not in actions involving wholly intrastate transactions but in those based upon contracts, sought to be enforced in the state court, which concern interstate transactions to which the F.A.A., by its own terms, applies. In cases involving interstate transactions, the Federal courts have invoked the. Federal Act to require arbitration, and preclude judicial determination, of questions not arbitrable under state law. (See Prima Paint v. Flood & Gonklin, 388 U. S. 395, supra; Robert Lawrence Co. v. Devonshire Fabrics, 271 F. 2d 402.) In Lawrence (271 F. 2d 402, supra), for instance, an abtion was brought in the Federal court to enforce an arbitration provision contained in a contract involving an interstate transaction. The Court of Appeals for the Second Circuit held that the arbi *583 tration clause must be enforced in accordance with the F.A.A., even though the state court, applying its own law, would have reached a contrary conclusion. And, in Prima Paint (388 U. S. 395, supra), the Supreme Court held that, since the contract evidenced a transaction involving interstate commerce, it came within the coverage of the F.A.A. Rejecting the contention that, since the case was in the Federal court solely by reason of diversity of citizenship, it was “ constitutionally ” impermissible to apply the Federal Act, the court proceeded to stress that that statute was enacted by Congress with respect to matters — contracts involving maritime and interstate commerce transactions—over which it has incontestable legislative power (388 U. S., at p. 405):
“ The question in this case * * * is not whether Congress may fashion federal substantive rules to govern questions arising in simple diversity case's. See Bernhardt v. Polygraphic Co. [350 U. S.], at 202, and concurring opinion, at 208. Rather, the question is whether Congress may prescribe how federal courts are to conduct themselves with respect to subject matter over which Congress plainly has power to legislate. The answer to that can only be in the affirmative. And it is clear beyond dispute that the federal arbitration statute is based upon and confined to the incontestable federal foundations of ‘ cónfrol over interstate commerce and over admiralty.’ H.R. Rep. No. 96, 68th Cong., 1st Sess., 1 (1924); S. Rep. No. 536, 68th Cong., 1st Sess. 3 (1924).” (Emphasis supplied.)
Accordingly, it was concluded, state rules allocating functions between court and arbitrator do not control. Thus, Prima Paint makes it clear that in an action brought in the Federal courts, which involves arbitration provisions in maritime or interstate transactions, the F.A.A. overrides inconsistent provisions of arbitration acts of the several states. Although the Supreme Court was not called upon to determine whether the F.A.A. had to be applied in the state courts as well as in the Federal courts, we lean to the view that what was said applies equally to suits involving maritime transactions regardless of the forum in which they are brought.
*584 In any event, though, it seems manifest that in the ease before us, where the entire contract, and all of the questions involved, are solely Federal in nature, the F.A.A. must be applied even when brought in the courts of our State. In this respect, the situation herein is analogous to that in which the Federal courts find themselves when they are presented with a question of arbitrability in a wholly intrastate controversy. (See, e.g., Bernhardt v. Polygraphic Co., 350 U. S. 198, supra.) The Supreme Court’s reasoning in that sort of case, as expressed in Bernhardt, is most enlightening (350 U. S., at pp. 203-204):
“ If the federal court allows arbitration where the state court would disallow it, the outcome of litigation might depend on the courthouse where suit is brought. For the remedy by arbitration, whatever its merits or shortcomings, substantially affects the cause of action created by the 'State. The nature of the tribunal where suits aré tried is an. important part of the parcel of rights behind a cause of action. The change from a court of law to an arbitration panel may make a radical difference in ultimate result. * * * We said in the York case [326 U. S. 99] that ‘ The nub of the policy that underlies Erie R. Co. v. Tompkins [304 U. S. 64] is that for the same transaction the accident of a suit by .a non-resident litigant in a federal court instead of in a State court á block away should not lead to a substantially different result. ’ 326 U. S., at 109. There would in our judgment be a resultant discrimination if the parties suing on a Vermont cause of action in the federal court were remitted to arbitration, while those suing in the Vermont court could not be.” (Emphasis supplied.)
This reasoning would apply even if the Supremacy Clause did not require us to conform to, and apply, the provisions of the Federal statute. Any other conclusion, we suggest, would place the court’s stamp of approval on a particularly offensive form of forum shopping. If the appellant had sought a stay of arbitration in the District Court for the Southern District of New York, it would unquestionably have been denied. Despite this, the petitioner would have us grant its petition, and deny *585 arbitration of a question wholly unrelated to New York interests, merely because it was filed in .the State Supreme Court just across the street from the Federal District Court.
A change from an arbitration panel to a law. court may, the Supreme Court pointed out in the Bernhardt case (350 U. S. 198, 203, supra), make “ a radical difference in ultimate result ”'of a contractual dispute. This being so, statutes such as CPLR 7502 (subd. [b]), which determine the scope of issues to be determined by the arbitrator, must — as the court held in Bernhardt in the converse situation there presented—be treated as “ outcome determinative.” Just as the Federal courts will apply the F.A.A. only to maritime and interstate transactions, where a substantial Federal interest is involved, the availability of a stay under our arbitration act must be restricted to transactions in which New York has some reasonable basis for applying its own law.
In sum, then, we would affirm the determination below even if such a result is not constitutionally mandated by the decision in Prima Paint. We deem it wise, indeed necessary, that a litigant in a controversy governed exclusively by Federal substantive law be not permitted to come into our courts solely for the purpose of avoiding an arbitration directed and compelled under the Federal statute.
The order appealed from should be affirmed, with costs.
Judges Scileppi, Bergan, Breitel, Jasen and Gibson concur with Chief Judge Fuld; Judge Burke dissents and votes to reverse on the dissenting opinion at the Appellate Division.
Order affirmed.

. The arbitration clause, insofar as relevant, provides:
"Any dispute arising during execution of this Charter-Party shall, be settled in New York, Owners and Charterers each appointing an Arbitrator —■ Merchant or Broker — and the two thus chosen, if they cannot agree, shall nominate a third Arbitrator—Merchant or Broker—whose decision • shall be final ”.

. “It is therefore immaterial”, the court wrote in the York case (326 U. S., at p. 109), “whether statutes of limitation are characterized either as ‘substantive’ or ‘procedural’ in State court opinions in any use of those terms unrelated to the specific issue before us. * * * In essence, the intent of [Erie R. Co. v. Tompkins, 304 U. S. 64] was to insure that, in all eases where a federal court is exercising jurisdiction solely because of the diversity of citizenship of the parties, the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in -a State court. The nub of the policy that underlies Erie R. Co. v. Tompkins is that for the same transaction the accident of a suit by a non-resident litigant in a federal court instead of in a State court a block away should not lead to a substantially different result.”