**HORNBLOWER & WEEKS–HEMPHILL NOYES, INCORPORATED, Petitioner,**

v.

**A. S. CSAKY, Respondent.**

**No. 76 Civ. 1883.**

United States District Court, S. D. New York.

Feb. 24, 1977.

Beekman & Bogue, New York City, for petitioner by Martin P. Unger, Ward B. Hinkle, New York City.

Goldstein, Ahalt & Bennett, College Park, Md., for respondent Csaky by Allen J. Kruger, Leonard R. Goldstein, College Park, Md.

Commodity Futures Trading Commission Appearing amicus curiae by Howard Schneider, Richard E. Nathan, Joan L. Loizeaux, Washington, D. C.

## MEMORANDUM

STEWART, District Judge:

In this proceeding petitioner Hornblower & Weeks-Hemphill, Noyes Incorporated ("Hornblower") asks the Court to stay a reparation proceeding [1] that respondent A. S. Csaky has commenced before the Commodity Futures Trading Commission ("CFTC").[2] Hornblower seeks the stay on the ground that the issues involved in the reparation proceeding already have been determined in an arbitration proceeding which was reduced to judgment in the New York State Supreme Court under a clause in the contract between Hornblower and Csaky, and that the arbitrator's award is dispositive of all disputes between the parties. It is necessary to set forth a brief summary of the prior relationship and actions of the parties (which are undisputed) before turning to the question of whether this Court can grant a stay of the reparation proceedings.

On June 17, 1975, Mr. Csaky opened an account with Hornblower to trade in commodity futures. Csaky executed a customer agreement which contained the following provisions:

**1.** Pursuant to Section 14 of the Commodity Exchange Act, as amended, 7 U.S.C. § 18.

**2.** The Commodity Futures Trading Commission Act of 1974 amended the Commodity Exchange Act by, among other things, creating the Commodity Futures Trading Commission as an independent agency "[with] exclusive jurisdiction with respect to accounts, agreements . . . and transactions involving contracts of sale of a commodity for future delivery, traded or executed on a contract market . . . or any other board of trade, exchange, or market, . . . ." 7 U.S.C. §§ 2 and 4a.

6. This agreement and its enforcement shall be governed by the laws of the State of New York.

7. Controversies which may arise between you and the undersigned shall be determined by arbitration in the City of New York in accordance with the rules of the American Arbitration Association; or at the election of the undersigned, in accordance with the rules of the Board of Arbitration of the New York Stock Exchange, Inc. The award of any arbitrators appointed pursuant hereto shall be final and judgment upon the award rendered may be entered in any court having jurisdiction. The undersigned . . . hereby submits to the jurisdiction of such court.

Mr. Csaky deposited approximately $25,000 with Hornblower at the time he signed the agreement. Throughout the summer of 1975, Hornblower traded for Mr. Csaky's account and as a result of these transactions, Csaky suffered a total loss of approximately $56,000. Since Csaky had previously paid Hornblower $25,000, his account had a deficit balance of approximately $31,000. Csaky refused to pay this amount, claiming that Hornblower had mishandled the account and thus was responsible for the loss.

To resolve the dispute, Hornblower, on or about October 1, 1975, commenced an arbitration proceeding against Csaky for the recovery of $31,000, under the auspices of the American Arbitration Association. The arbitration hearing was held on February 6, 1976, but Mr. Csaky did not appear because he had filed a reparation complaint before the CFTC (see *infra*).[3] On Febru-

**3.** Petitioner claims Csaky waived his administrative remedies by failing to assert them at the arbitration proceeding. Petitioner also claims that the doctrines of laches and estoppel should apply to prevent Csaky from pursuing his administrative remedy. We disagree. We find that Csaky properly asserted his rights under 7 U.S.C. § 18, the reparation section of the Commodity Futures Trading Act, by filing his reparation complaint with the CFTC and that he did so in timely fashion since he filed less than 2 weeks after the reparation section went into effect (see footnote 4, *infra* ).

ary 24, 1976, the arbitrator awarded Hornblower $31,000 plus costs and interest. On March 25, 1976, Hornblower commenced an action in the New York State Supreme Court seeking to confirm the arbitrator's award, and seeking an entry of a judgment thereon. The award was reduced to judgment on April 20, 1976, and was filed with the Clerk of the County of New York on April 26, 1976.

 Concurrent with these arbitration proceedings, Mr. Csaky filed on February 5, 1976,[4] a reparation complaint with the CFTC, seeking to recover damages against Hornblower.[5] On March 2, 1976, the CFTC, in accordance with its Rules, 17 C.F.R. § 12.22, determined that Mr. Csaky's complaint stated a claim against Hornblower, and the CFTC forwarded the complaint to Hornblower for an answer, which it was required to file by May 7, 1976.

On April 16, 1976, Hornblower commenced the instant proceeding in the New York State Supreme Court, seeking to stay Csaky from pursuing the reparation proceeding.[6] On April 26, 1976, the case was properly removed to the Federal District Court on the basis of diversity jurisdiction. On May 6, 1976, after a hearing, this Court refused to grant a temporary stay of the reparation proceedings pursuant to 28 U.S.C. § 1651(a). Consequently, Hornblower answered the reparation complaint, and a formal reparation proceeding was instituted by the Commission.

 Petitioner has devoted most of its brief to urging us to apply the stay provision of New York CPLR § 7503(a) (McKinney's 1963) to permanently enjoin the reparation proceeding. Petitioner claims that New York law applies in this diversity action because proceedings to compel arbitration are substantive as this term has been defined by the federal courts under *Erie v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Lummus Company v. Commonwealth Oil Refining Company,* 195 F.Supp. 47 (S.D.N.Y.1961). While we do not disagree with the above stated proposition of law, we nevertheless find that § 7503(a) is not applicable to the situation in the case at bar.

CPLR § 7503(a) reads as follows:

*(a) Application to compel arbitration; stay of action.* A party aggrieved by the failure of another to arbitrate may apply for an order compelling arbitration. Where there is no substantial question whether a valid agreement was made or complied with, and the claim sought to be arbitrated is not barred by limitation under subdivision (b) of section 7502, the court shall direct the parties to arbitrate. Where any such question is raised, it shall be tried forthwith in said court. If an issue claimed to be arbitrable is involved

---

**4.** This reparation proceeding was commenced less than 2 weeks after the effective date of the reparation section, 7 U.S.C. § 18. However, the Act stated that the reparation proceeding remedy could be used for claims that arose within one year immediately prior to the effective date, i. e., claims that arose after January 23, 1975. The claims in the instant case arose in the summer of 1975, and thus are covered by these reparation provisions.

**5.** In its *amicus* brief at pp. 4–5, the CFTC outlined the procedures for a reparation proceeding under Section 14 of the Commodity Exchange Act, as amended, 7 U.S.C. § 18, as follows: "Section 14 provides that any person complaining of a violation of the Act, or of any rule, regulation or order thereunder, by any person registered with the Commission—including futures commission merchants such as Hornblower—may seek a reparation award in a proceeding conducted before the Commission.

The Commission may entertain reparation complaints based upon violations of the Act which occurred on or after January 23, 1975. The Act anticipates that a reparation proceeding will be initiated by a complaint, followed by an answer, a hearing before an Administrative Law Judge, application for review of the Administrative Law Judge's findings by the Commission, and a full right of review in the courts," (footnotes omitted).

**6.** Although Hornblower frames its petition in terms of staying Csaky individually, if the Court granted the relief requested it would have the effect of enjoining the CFTC from proceeding with its reparation proceeding. Thus the effect of granting Hornblower's stay, would be to grant a stay of an administrative proceeding. *Bache Halsey Stuart, Inc. v. French,* 425 F.Supp. 1231 (D.C.D.C.1977).

in an action pending in a court having jurisdiction to hear a motion to compel arbitration, the application shall be made by motion in that action. If the application is granted, the order shall operate to stay a pending or subsequent action, or so much of it as is referable to arbitration.

The language of the statute provides only that a stay be granted in conjunction with a motion to compel arbitration. It appears that there is no such remedy available to a party who wishes to stay an action without taking the affirmative step of compelling arbitration.[7] In the instant case, Hornblower has never moved to compel arbitration. Petitioner commenced an arbitration proceeding and instituted an action in the New York State Supreme Court to confirm the arbitrator's award. Four days before the award was reduced to judgment, petitioner finally moved, in a separate action, to stay the CFTC proceedings. Petitioner asserts that the action to stay was "the consequence of, and is supplementary to, the prior State Court proceeding."[8] We do not find that these actions obviate the requirement that any stay be in conjunction with a motion to compel arbitration.[9] The fact remains that the petitioner has failed to move to compel arbitration, and thus we cannot stay the reparation proceedings under CPLR § 7503(a).

Even if petitioner had brought a timely proceeding to compel arbitration under CPLR 7503(a), we would not grant a stay under that section because we find that federal law applies in this case. The customer agreement between Hornblower and Csaky provides that the agreement and its enforcement shall be governed by New York law. As a federal court sitting in a diversity proceeding, we would also apply substantive state law. Accordingly, we have consulted New York law and have found that the New York courts apply federal law where, as here, the dispute concerns a contract involving interstate commerce. *A/S J. Ludwig Mowinckels Rederi v. Dow Chemical Co.,* 25 N.Y.2d 576, 307 N.Y.S.2d 660, 255 N.E.2d 774 (1970); *Prima Paint v. Flood and Conklin,* 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967); *Boston and Maine Corp. v. Chicago, B. & Q. R. Co.,* 381 F.2d 365 (2d Cir. 1967). Indeed, most recently in *Shearson Hayden Stone v. Miles,* the New York State Supreme Court specifically held that the federal arbitration law, not state law, applies to applications to stay reparation proceedings such as this one before the CFTC (N.Y.L.J. October 13, 1976, p. 7, col. 3, S.Ct., N.Y.Co.). Petitioner urges that ". . . since nowhere in the pleadings in the matter has it been alleged that the agreement involves interstate commerce, and since the agreement does not so

7. Petitioner cites the Court to *Simon v. Vogel,* 9 A.D.2d 63, 191 N.Y.S.2d 248 (1st Dept.1959) to support the proposition that one can apply for a stay even if one has not demanded arbitration. However, *Simon* was decided under Civil Practice Act § 1451, the predecessor to CPLR § 7503(a) and § 7503(a) differs from former § 1451 in one significant aspect:

"It will be observed that the exclusive remedy provided [under § 7503(a)] for a party aggrieved by the failure of another to arbitrate is either a motion in a pending action to compel arbitration or an independent special proceeding to compel arbitration. The Civil Practice Act § 1451 provided a third remedy: a motion to stay the action. The CPLR simply provides that, if a motion to compel is granted, it operates as an automatic stay of the pending action. It would appear therefore, that there is no remedy available to a party who wishes to stay an action without taking the affirmative [step] of compelling arbitration." CPLR § 7503 Supplementary

Practice Commentaries by Dean Joseph McLaughlin, 1965 Commentary (McKinney's Supp.1976).

8. Petitioner's Memorandum of Law, p. 6.

9. Petitioner in oral argument before this Court on May 6, 1976, represented to the Court that the underlying petition in this case sought to compel arbitration (on the $25,000 Hornblower had already collected and which was not included in the arbitration award) as well as move for a stay (Transcript p. 5). However, in paragraph 6 of the verified petition, Hornblower asks only for a "stay [of] all further proceedings in the reparation proceedings. Thereafter respondent Csaky may institute an arbitration . . . as he has a right to do under his agreement to arbitrate." Thus, while Hornblower may hope that Csaky will move to compel arbitration if this Court stays the CFTC proceedings, Hornblower itself has never moved to compel arbitration.

provide . . ."[10] the Court should assume that the contract does not involve interstate commerce. However, the Court cannot ignore the facts. A reading of the Commodity Exchange Act, §§ 3 and 5 in particular, demonstrates the interstate nature of the commodities market, *and see, Shearson, supra.* Accordingly, the Court finds that the matters in the case at bar involve interstate commerce, and are governed by federal law.

Since the arbitration provisions of the New York CPLR do not apply, either the Federal Arbitration Act or the Commodity Futures Trading Act would apply to the arbitration provision in the Csaky-Hornblower contract. However, neither Act provides for a court to stay the reparation proceedings, and so it is unnecessary for this Court to reach the decision concerning which Act should apply.[11] The Commodity Futures Trading Act authorizes two remedies, although it does not preclude any other statutory or common law remedies (7 U.S.C. § 2). It provides for the administrative reparation proceeding (7 U.S.C. § 18), and it also authorizes

> "a fair and equitable procedure through arbitration or otherwise for the settlement of customers' claims and grievances against any member or employee thereof: *Provided* that (i) the use of such procedure by a customer shall be voluntary, (ii) the procedure shall not be applicable to any claim in excess of $15,000 . . . ."
> 7 U.S.C. § 7a(11).

While this arbitration provision does not appear to be applicable to the controversy in this case, since the amount in dispute exceeds $15,000, the Court will not make a finding on this issue since it is a matter which should be decided in the first instance by the CFTC. What is controlling is that nowhere in the Act does it authorize a court to stay the reparation proceeding.[12] The Federal Arbitration Act also does not provide for a stay of administrative proceedings. The lack of such a provision is consistent with a long-standing public policy of hesitancy to interfere with administrative proceedings before all administrative remedies have been exhausted, *Renegotiation Board v. Bannercraft Co.,* 415 U.S. 1, 94 S.Ct. 1028, 39 L.Ed.2d 125 (1974); *Myers v. Bethelem Shipbuilding Corp.,* 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638 (1938); *M. G. Davis & Co. v. Cohen,* 369 F.2d 360 (2d Cir. 1966). In addition, Hornblower has shown no irreparable injury that it will suffer by having to participate in the reparation proceeding before the CFTC, and so we see no reason for deviating from the above stated administrative policy. Mere litigation expense, even if it is substantial, does not constitute irreparable injury. *Myers v. Bethlehem Shipbuilding Corp.,* 303 U.S. 41, 51, 58 S.Ct. 459, 82 L.Ed. 638 (1938). Thus, neither the Commodity Futures Trading Act nor the Federal Arbitration Act authorize the Court to grant the stay requested in the instant case.

Accordingly, the Court denies Hornblower's petition for reparation proceedings before the CFTC, and dismisses the action. Settle order in accordance with this opinion.

SO ORDERED.

---

10. Petitioner's Reply Brief, p. 8.

11. In the only case the Court could find on this issue, *Bache Halsey Stuart v. French,* (D.C.D.C. No. 76–1803, January 14, 1977), Judge Sirica found that the use of the Federal Arbitration Act to order private arbitration of a dispute arguably under the Commodity Act was inconsistent with the Commodity Exchange Act and its underlying purpose.

12. Clearly the CFTC could stay its own proceeding if it felt that there was "a waiver of the remedies available under the reparation procedures . . . [by an] arbitration proceeding or court litigation [which] is pursued to a final decision on the merits" 41 Fed.Reg. p. 3994 (January 27, 1976).