The MANES ORGANIZATION, INC.
(Hampton Bays Division), Plaintiff,

v.

STANDARD DYEING AND FINISHING
CO., Defendant.

No. 78 Civ. 2871 (CHT).

United States District Court,
S. D. New York.

June 6, 1979.

Kreindler, Relkin & Goldberg, New York City, for plaintiff; George Goldberg, Michael D. Blutrich, New York City, of counsel.

Hahn, Hessen, Margolis & Ryan, New York City, for defendant; Melvin Beinart, Stephen L. Plutzer, New York City, of counsel.

## OPINION

TENNEY, District Judge.

In this diversity action alleging breach of implied warranty and negligence the defendant asserts that the issue sued upon is referable to arbitration and applies for a

---

stay of proceedings pursuant to 9 U.S.C. § 3.[1] The plaintiff is The Manes Organization, Inc. (Hampton Bays Division) ("Manes"), a New York textile company. The New Jersey defendant, Standard Dyeing and Finishing Co. ("Standard"), performs fabric dyeing, finishing and processing according to instructions from its customers—among them Manes— and ships the finished fabric pursuant to the customer's order.

This suit involves a contract for a particular lot of fabric which went from its "greige," or raw, unfinished state in Manes' hands to Standard for processing and then on to Manes' customer, L. W. Foster Sportswear Co. ("Foster"; the "Foster contract"). For this shipment Manes billed Foster $141,503.04, but Foster refused to pay, alleging defective processing. Manes began arbitration against Foster and sought to bring Standard into the same proceedings, which were to be held before the American Arbitration Association ("AAA") in New York City. Standard blocked that move by pointing out that its contracts with Manes contain an arbitration clause that specifically provides for the application of the Arbitration and Award Statutes of the State of New Jersey, not for arbitration before the AAA in New York.[2]

Rebuffed in its attempt to compel Standard's participation in the New York arbitration, Manes began this action for breach of implied warranty and negligence in the fulfillment of the Foster contract. Subsequently, Standard moved in New York State Supreme Court for an order compelling arbitration not only of the Foster contract dispute, but of disputes arising from other contracts between itself and Manes. By Order dated October 24, 1978, Justice

---

1. The parties acknowledge that this transaction has the requisite interstate character to fall within 9 U.S.C. § 3.

2. The arbitration provision on the reverse side of the Standard contract form states in pertinent part:

 All differences arising out of this contract shall be settled by arbitration in accordance with the Arbitration and Award Statutes of the State of New Jersey then existing.

*See, e.g.,* Exh. D–4 to Affidavit of Richard Knight, sworn to July 20, 1978.

Manes refers to the prospect of arbitrating under this clause as being forced to defend in "an unnamed tribunal in an unknown locale," Plaintiff's Memorandum of Law at 16, as if the State of New Jersey were some outer galactic forum in which Star Chamber procedure obtained.

Schwartz of that court ordered arbitration over Manes' objections, and by further Order dated January 4, 1979, she heard Manes' reargument on the arbitration matter and adhered to her original ruling. *The Manes Organization, Inc. (Hampton Bays Division and Fashionlooms Division) v. Standard Dyeing and Finishing Co.*, No. 12293/78 (Sup.Ct. Oct. 24, 1978 and Jan. 4, 1979), Exhs. to Letters dated Nov. 1, 1978 and Jan. 5, 1979 from Melvin Beinart, Esq., to this Court. The Court concludes that the decisions of the New York court are res judicata on this matter and that the civil action brought here by Manes must be stayed pending arbitration.

Res judicata applies if there has been a prior judgment on the legal or factual merits of the prior case and if the same cause of action between the same parties is being adjudicated in a second forum. *Mitchell v. National Broadcasting Co.*, 553 F.2d 265, 268 (2d Cir. 1977). The test for determining whether causes of action are the same is whether a different judgment in the second action would impair or destroy rights or interests established in the first action, whether the same evidence proves the first and the second, and whether the essential facts and issues in the second were present in the first. *Herendeen v. Champion International Corp.*, 525 F.2d 130, 133–34 (2d Cir. 1975). In this case there can be no question that the identical issues were raised by these parties in the New York State proceedings, and that Justice Schwartz has already ruled on the legal and factual merits of the case. It makes no difference that the New York State proceeding was one to compel arbitration under a contract while the action here is a damage claim arising from the alleged breach of the same contract. It is substance and not form that governs where res judicata is argued, and "[r]epetitive litigation is not to be allowed simply because the claim bears new garb." *Thistlethwaite v. City of New York*, 362 F.Supp. 88, 93 (S.D. N.Y.1973), *aff'd*, 497 F.2d 339 (2d Cir.), *cert. denied*, 419 U.S. 1093, 95 S.Ct. 686, 42 L.Ed.2d 686 (1974).

Reviewing the facts as they were presented to this Court, it appears that the disputed work was performed under a written form contract between the two parties. The Foster contract was dated July 21, 1977, and was one of 11 entered into by Manes and Standard between May 1977 and February 1978. Apparently the custom between the parties was to agree orally on a particular fabric finishing job and for Standard later to send to Manes the contract to memorialize the agreement. The same form was used in all 11 contracts. It provides on its face that

[d]elivery to us [*i. e.*, Standard] of your instructions relating to goods as described, whether received or not, or acceptance by you of delivery of any goods as described, or payment for processing in whole or in part shall constitute your assent and acceptance of this contract and of the terms and conditions *on the face and reverse sides* WHETHER OR NOT YOU HAVE RETURNED TO US A COPY OF THE CONTRACT SIGNED BY YOU.

Exh. B to Defendant's Order to Show Cause (italics the Court's; upper case in the original). This paragraph is located directly above the signature line on the face of the contract, and the reverse side contains the arbitration clause now invoked by Standard.

Standard maintains that a valid contract arose because Manes accepted according to the terms of the face of the contract by issuing instructions about finishing, by accepting delivery of the finished goods through designation that they be delivered directly to Foster, and by paying— at least in part—for its debt to Standard under the Foster contract. Manes denies none of this. Instead it argues—to this Court, at least—that the transaction between it and Standard was governed by Article 2 of the Uniform Commercial Code; that according to Code section 2–207 the arbitration clause on Standard's form contract was a material variance in the terms of the contract, and that absent proof of express acceptance of that "variance" by Manes, the arbitration clause was invalid. For the reasons set out in the margin the Court finds that the contract between Manes and Standard was for services and

not for goods and, a fortiori, that Article 2 does not apply. Therefore, this theory— whether or not raised in the New York court—is dismissed as meritless.[3]

 Beyond the UCC argument, Manes urges another theory which was without question raised before Justice Schwartz. Manes alleges that it is not bound to Standard's arbitration clause because arbitration was never mentioned in the oral negotiations between the parties, because the Foster contract was never signed by Manes, and because the face of the contract form contains no explicit reference to the arbitration clause on the reverse

side. In rebuttal, Standard argues that a valid contract arose from Manes' acts pursuant to the acceptance provision printed on the face of the contract form, and, in any event, that Manes is estopped from denying the validity of the arbitration clause because Manes itself relied on it when it sought arbitration of this dispute before the AAA in New York.[4]

Plainly these are the same arguments that were raised by the two parties before Justice Schwartz, and her decision just as plainly reveals that she considered them in order to make that decision. In her October 24, 1978 Order she stated:

---

3. Article 2 of the Uniform Commercial Code governs transactions in goods in a sale context, but as "a sale is defined as the transfer of title [UCC Section 2–106(1)] to movable things [UCC Section 2–105(1)] it follows that a contract which calls merely for the rendition of personal services is not subject to Article 2." 1 Anderson, *Uniform Commercial Code* § 2– 102:5, at 209 (2d ed. 1970).

To determine whether a contract is one for services or is a sale the court looks to the essence of the agreement to see whether service predominates over any sale aspect, such as supply of materials by the principal to the service entity. In *North American Leisure Corp. v. A & B Duplicators, Ltd.,* 468 F.2d 695 (2d Cir. 1972), the debate concerned the transfer of a master tape to a duplicating company for reproduction into salable cartridges and cassettes. The court analogized the transaction to publishing reproduction cases. In those situations, service contracts—not sales—are invariably found where the publisher provides a manuscript to a printer who agrees to manufacture the books and who supplies the paper, the printing and binding material, the plates and the engraving.

This fabric-dyeing-and-finishing contract can just as easily be analogized to the publishing cases, for here the "manuscript" equivalent is the instruction given to the processor for the color and finish to be reproduced on the greige goods. Moreover, it is of no moment that the fabric to be processed was transferred from Manes' possession to Standard's: "[w]here service predominates, and the transfer of personal property is only incidental to the transaction, it is a contract for work, labor and materials and not a sale." *William H. Wise & Co. v. Rand McNally & Co.,* 195 F.Supp. 621, 625 (S.D.N.Y. 1961). The facts here dictate the conclusion that the change in physical custody of the raw goods from Manes to Standard was incident to a bailment and not a sale.

4. Even were there no res judicata argument in this case, Standard's contentions on the merits

would prevail here. The governing rule in a 9 U.S.C. § 3 application for a stay while the parties arbitrate is that "a federal court may consider only issues relating to the making and performance of the agreement to arbitrate." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 404, 87 S.Ct. 1801, 1806, 18 L.Ed.2d 1270 (1967). To those issues the court applies federal law which, in this area, is made up of generally accepted contract law principles. *Robert Lawrence Co. v. Devonshire Fabrics, Inc.,* 271 F.2d 402, 404–09 (2d Cir. 1959), *cert. dismissed,* 364 U.S. 801, 81 S.Ct. 27, 5 L.Ed.2d 37 (1960). It is hornbook contract law than an offeror "may suggest and authorize an acceptance in one or more particular modes . . . [and] compliance with the suggested mode will close the contract." 1 *Corbin on Contracts* § 77, at 329 (1963). By performing acts designated as acceptance on Standard's contract form, *i. e.,* transmittal of dyeing and finishing instructions, etc., Manes entered into a formal and binding contract for Standard's services. No signed agreement was necessary. The only issue then, would be whether Manes is to be bound by the arbitration clause in the contract as agreed to. In this inquiry the Court would keep in mind that "[i]n the absence of allegations of fraud or duress, [other] courts have focused 'not on whether there was subjective agreement to all clauses in the underlying contract but [on] whether there was agreement to the contract embodying the clause in question.' " *Avila Group, Inc. v. Norma J. of California,* 426 F.Supp. 537, 541 (S.D.N.Y.1977) (citations and footnote omitted). All doubts would be resolved in favor of arbitrability. *Metro Industries Painting Corp. v. Terminal Construction Co.,* 287 F.2d 382 (2d Cir.), *cert. denied,* 368 U.S. 817, 82 S.Ct. 31, 7 L.Ed.2d 24 (1961). Here there is no doubt that there was a valid, underlying contract between the parties, and that the contract embodied the arbitration clause which, by the terms of 9 U.S.C. § 2, need only be a "written" provision in a "contract evidencing a transaction involving commerce."

Manes contends that there is no enforceable agreement between the parties for arbitration. However, Manes is estopped to deny the validity of the arbitration provision, for when it served its own Demand for Arbitration upon Standard in May, 1978, it relied on the very arbitration provision it now argues is invalid. October 24th Order at 2. *See* Exh. F. to Affidavit of Richard Knight, sworn to July 21, 1977 (Manes demands arbitration before the AAA Commercial Arbitration Tribunal of "a controversy which has arisen between it and [Standard] out of a written contract . . . dated July 21, 1977, *which provides for arbitration of all disputes.*" (Emphasis added)).

Seeking to escape preclusion, Manes makes the odd argument that a decision arrived at by a New York court cannot be res judicata in federal litigation concerning an issue within the scope of the Federal Arbitration Act ("F.A.A."). Because Manes offers no support for this theory the Court can only speculate that this assertion arises from a distorted view of the holding in *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). There the Supreme Court determined that a federal court must apply federal law to decide the validity of an arbitration clause where the transaction in dispute was within the compass of the F.A.A. The New York Court of Appeals construed *Prima Paint* to mean that "in an action brought in the Federal courts, which involves arbitration provisions in . . . interstate transactions, the F.A.A. overrides inconsistent provisions of arbitration acts of the several states." *Matter of A/S J. Ludwig Mowinckels Rederi v. Dow Chemical Co.*, 25 N.Y.2d 576, 585, 307 N.Y.S.2d 660, 665, 255 N.E.2d 774, 778 (1970). ("*Mowinckels*"). The *Mowinckels* court then added its own corollary, *i. e.*, that it is "wise, indeed necessary, that a litigant in a controversy governed exclusively by Federal substantive law be not permitted to come into [New York] courts *solely for the purpose of avoiding an arbitration* directed and compelled under the Federal statute." *Id.* (Em-

It is the law in both state and federal court that the arbitration agreement or clause does not have to be signed or subscribed to by the parties. *Ocean Industries, Inc. v. Soros Associates Int'l, Inc.*, 328 F.Supp. 944, 947 (S.D.N.Y.1971); *Matter of Helen Whiting, Inc. v. Trojan Textile Corp.*, 307 N.Y. 360, 121 N.E.2d 367 (1954). Moreover, an agreement to arbitrate a particular issue need not be express—it may be implied from the conduct of the parties. *Ficek v. Southern Pacific Co.*, 338 F.2d 655, 656 (9th Cir. 1964). Here the parties had negotiated a series of transactions, all memorialized in the identical contract form as that now in dispute. Goods were processed and shipped under the contract. Significantly, a Manes representative had signed the three contracts immediately preceding the Foster contract, and they all contain the arbitration provision, knowledge of which Manes now denies. That denial is rendered all the more dubious because the parties here are sophisticated businesses dealing at arms' length and functioning in the textile field where "arbitration provisions are apparently so common . . . that the courts of New York have indicated willingness to take judicial notice of the fact." *Avila Group, Inc. v. Norma J. of California, supra*, 426 F.Supp. at 541 n. 10. Most damaging of all to Manes' position is the undisputed fact that Manes relied on the very contract and arbitration clause it here disavows when it sought to bring Standard into the New York arbitration with Foster. *See* text *infra*. Manes cannot be permitted to assert a valid contract and arbitration clause before a New York arbitration tribunal and then turn around and deny the validity of the very same arbitration clause in this action for damages against Standard. *See Dan River, Inc. v. Cal-Togs, Inc.*, 451 F.Supp. 497 (S.D.N.Y.1978) (textile buyer estopped from denying validity of arbitration award on grounds of failure to agree on arbitration tribunal where buyer had itself once initiated arbitration and once sued on the very same contract); *Avila Group, Inc. v. Norma J. of California, supra* (signatory to textile purchase contract could not claim damages under contract in one action and at the same time deny the validity of the contract in order to avoid the consequences of arbitration). Of course there is no question that the absence of Manes' signature on the Standard contract is no more important to the validity of the arbitration clause than it was to the validity of the contract as a whole: the "variety of ways in which a party may become bound by a written arbitration provision is limited only by generally operative principles of contract law." *Fisser v. International Bank*, 282 F.2d 231, 233 (2d Cir. 1960). Those principles are at work here, first in Manes' acceptance of the contract by performance and now in the estoppel to attack the validity of a contract it has already asserted as valid.

**692**

phasis added). Obviously, no such purpose was evinced by Standard when it sued in New York court to *compel* arbitration.

■ Where, as here, the issue of arbitrability has already been determined in favor of arbitration, there can be no reason to relitigate in the federal court in order to further a policy favoring what has already been done. Moreover, on any appeal there is very little danger that a New York judicial panel will misapply the New York Court of Appeal's holding in *Mowinckels.* Because it is absolutely clear that the cause of action to compel arbitration in the New York courts and the affirmative defense of arbitrability offered in this damage action are identical, this Court deems the New York action conclusive. The res judicata doctrine exists to serve "considerations of judicial economy and a public policy that favor[s] injecting certainty into the legal system . . . [through the avoidance of] repetitive litigation of the same causes of action." *Expert Electric, Inc. v. Levine,* 554 F.2d 1227, 1232 (2d Cir. 1977). No meritorious reason exists here to circumvent those salutary goals.

The motion to stay the instant proceedings pending arbitration, 9 U.S.C. § 3, is granted.

So ordered.