Fuchsberg, J.
(dissenting). As best I can fathom it from the record, the opinion and order of the Appellate Division dismissing the complaint proceeds on a misconception of the letter and spirit of maritime law.
To initiates in the law of the sea this is not a complex case. The plaintiff’s decedent, Carl P. Blume, master of a tanker owned by defendant was swept overboard in rough weather during a voyage across the Pacific from the United States to India. This action for wrongful death brought on theories of unseaworthiness and negligence, was anchored in the main on allegations that (1) on the day Blume lost his life the ship was wallowing helplessly in extremely turbulent seas, having lost rudder control because of a defective valve; (2) that the master had set out on a tour of inspection of the extensive consequent damage to the vessel; (3) that, while so engaged, he disappeared from sight in heavy seas at a point where unrepaired protective railings had been washed away or damaged; and (4) that the ship did not reverse course to search for the master until 5 hours and 40 minutes later.*
After an extensive jury trial, Justice Greenfield, in an impeccable charge, submitted issues of alleged unseaworthiness and negligence, along with those of proximate. cause, contributory negligence and damages, to the jury. The jury returned a verdict of $808,536, reduced by its finding that contributory negligence accounted for 10% of the loss, to $727,682.40. Although the Trial Judge denied all motions to disturb the verdict, the Appellate Division reversed the judgment entered thereon and, as indicated, dismissed the complaint. I believe the law and the facts leave us no option but to reinstate the judgment.
At the outset, I stress that Federal and not New York law controls this case. Though the Federal Judiciary Act grants *846 concurrent jurisdiction to the Federal and State courts (US Code, tit 28, § 1333), all must apply the Federal law in order to secure a single uniform body of admiralty law (see Matter of Rederi [Dow Chem. Co.], 25 NY2d 576, 581 [Fuld, Ch. J.]).
Supplanting the ordinary common-law duty of master and servant, maritime law is imbued with an overtly "humanitarian policy” responsive to the hazards faced by those who go to sea and, accordingly, has seen fit to implement that policy by shifting the burden of the cost of injury to those thought best able to bear it. Thus, the law has imposed a liability for risks which the owner of a vessel can prevent, whether by providing a seaworthy vessel or avoiding negligence, that for all practical purposes is absolute. (Seas Shipping Co. v Sieracki, 328 US 85, 93-94; Milin v United States Lines, 31 NY2d 336, 338.) And as to negligence, Federal statutory law has for like reasons made inapplicable the traditional tort doctrines of assumption of risk and contributory negligence (US Code, tit 45 [Federal Employers’ Liability Act], as incorporated by US Code, tit 46, § 688 [Jones Act]; see Ferguson v Moore-McCormack Lines, 352 US 521).
Furthermore, consistent with the protective nature of this substantive law, the level of proof necessary to establish a prima facie case of either unseaworthiness or negligence is reduced to a point where it can fairly be said that no more than a scintilla of evidence is necessary. So, in contrast to the heavier burden usually assessed by the common law, in cases like the present one it has been authoritatively stated that it suffices if there is proof that negligence or unseaworthiness played any part "however small” in causing an injury or death (Rogers v Missouri Pacific R. R. Co., 352 US 500, 506-510). Among other characterizations recognized as accurate descriptions of the requisite showing are "featherweight” (Landry v Two R. Drilling Co., 511 F2d 138, 142) and "slight” (Gilmore and Black, Admiralty, § 6-36, p 311).
So measured, to find support for a prima facie case in the record was a remarkably easy task.
Turning first to the loss of steering, the damage it caused and the fatal danger-ridden inspection thus precipitated, the defendant disputed whether the loss of rudder control occurred on December 16, when the fatality occurred, or three days earlier, on December 13, as the ship’s log entry indicated. But the entry hardly had to be determinative since there was proof of various irregularities in the log; these included the *847 fact that entries were not always made contemporaneously, thus opening up the real possibility that an entry date made later, especially under the stress of a very trying voyage, would be inaccurate. Moreover, because of the interposition of the international date line and the accompanying change of time zones, the difference between the two dates may have actually represented something less than two days. And, perhaps most important, even if the loss of steering and resulting damage indeed had occurred on the 13th, the result would only have enlarged the period during which evidence of unseaworthiness — including both the condition of the guardrails and the other damage — had existed to the 16th.
Next, with respect to the circumstances of Master Blume’s demise, according to the testimony of the witness Kuberaski, who last saw the master before he disappeared from sight as "green water” hit the ship, there was nowhere Master Blume could then have gone except overboard at that point. Notably, the damaged and missing rails, whose repair was the charge of Chief Officer Perkins, were the only things that could have prevented his being swept away. In fact, at one point defendant’s counsel agreed that whether the guardrails were unseaworthy and, if so, proximately causative of the death, was a question of fact for the jury.
With regard to the actual drowning and the failure to fulfill the obligation to search, I need only note that the record raised issues of fact as to whether the conduct of the ship’s personnel comported with their duty under the circumstances (see Abbott v United States Lines, 512 F2d 118, 121).
From all this evidence, the jury was certainly not compelled to draw the inferences which the Appellate Division ultimately did. Rather, as the Trial Judge correctly recognized, it was for the triers of the facts, not a reviewing court, to select from among the available inferences and conclusions those which it considered most reasonable (see Tennant v Peoria & Pekin Union Ry. Co., 321 US 29, 35). For the same reasons, though the Trial Judge came to the conclusion that loading and course-setting were primarily duties owed by the master to the vessel’s owner as his sole responsibility and therefore would not permit them to serve as an affirmative premise for recovery, it was for the jury alone to determine, as it did, what role these factors played on the issue of proximate cause or as a contributing factor in diminution of a recovery for negligence.
*848 Finally, a word as to why I not only would reverse but would reinstate the judgment as well. Ordinarily, the Appellate Division’s reversal having been on the law, a remittal to it for review of the facts would be in order (CPLR 5501, subd [c]). However, I believe that our rule of practice must bow to the dictates of the Jones Act and Federal maritime law. For a maritime tort is placed by the United States Constitution under the national power to control " 'its substance as well as its procedural features’ ” (Pope & Talbot v Hawn, 346 US 406, 409 [Black, J.], quoting Panama R. R. Co. v Johnson, 264 US 375, 386) (emphasis mine). A contrary view would affect the result of the litigation, "i.e., would be outcome determinative” (Matter of Rederi [Dow Chem. Co.], supra, p 581). It would subvert the clear intention of the Federal law that jury determinations of questions of fact govern irrespective of contrary judicial views as to the weight of the evidence. Accordingly, neither our State Constitution nor our procedural statutes are an impediment to the enforcement of the philosophy written into maritime law (US Const, art VI, cl 2).
Order affirmed, etc.

 Issues as to overloading and course-setting had also been pressed but were withdrawn from the jury’s consideration by the court before the case went to the jury on the ground that these would have been the exclusive responsibility of the master of the vessel himself.