TENNESSEE RIVER PULP & PAPER COMPANY, Plaintiff-Appellee,

v.

EICHLEAY CORPORATION, Defendant-Appellant.

Supreme Court of Tennessee.

July 6, 1982.

Robert J. Warner, Jr., Mary V. Anderson, Dearborn & Ewing, Nashville, for defendant-appellant; David S. Watson, Thorp, Reed & Armstrong, Pittsburgh, Pa., of counsel.

T. G. Pappas, Jay S. Bowen, Nashville, for plaintiff-appellee; Albert A. Haller, Evanston, Ill., of counsel.

## OPINION

BROCK, Justice.

The issue to be addressed is whether a contractual provision to arbitrate future disputes is revocable at will, in accordance with Tennessee common law, or whether it is irrevocable by virtue of the U. S. Arbitration Act, 9 U.S.C. § 1 *et seq.* (hereinafter the Act).

On July 13, 1977, Eichleay Corporation and Tennessee River Pulp & Paper Company, hereinafter, called Tennessee River, entered into a contract whereby Eichleay, as general contractor, agreed to expand the production facilities of Tennessee River's plant located in Counce, Tennessee. The contract price was $15,116,700.00 which included $350,000.00 in non-significant changes. Article 38 of the General Conditions of the contract document contained an agreement to arbitrate which provides that:

"*All* claims, disputes and other matters in question arising out of or relating to, this contract or the breach thereof, shall be decided by arbitration in accordance with

the Construction Industry Arbitration Rules of the American Arbitration Association, then obtaining, unless the parties mutually agree otherwise. This agreement so to arbitrate shall be specifically enforceable under prevailing laws. The award rendered by the arbitrator shall be final, and judgment may be entered upon it in accordance with the applicable law in any court having jurisdiction thereof." (Emphasis added.)

Article 11 of the contract provides that "this contract shall be construed in accordance with and governed by the laws of the State of Tennessee or political subdivisions thereof."

The contract provided that work was to begin on the expansion of the production facilities on July 15, 1977, and completed on September 15, 1978. On March 23, 1979, the contract was 98% complete and the plaintiff, Tennessee River, learned at this time that the defendant, Eichleay, was making a claim for approximately $4,000,-000.00 in additional expenses. On May 25, 1979, the contract was officially completed.

On October 18, 1979, Tennessee River made a "final payment" to Eichleay under the contract pursuant to a release which provided that certain claims of Eichleay were reserved. After it became apparent that the disputes could not be resolved by amicable agreement, on December 18, 1979, Eichleay filed its written demand for arbitration in accordance with the provisions contained in the contract. On December 26, 1979, Tennessee River gave notice that it had elected to revoke its agreement to arbitrate future disputes. On January 8, 1980, Eichleay responded that it considered revocation not to be effective and cited the United States Arbitration Act, 9 U.S.C. § 2.[1]

---

1. § 2, entitled "Validity, irrevocability, and enforcement of agreements to arbitrate," provides:

    "A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to per-

    form the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

On January 24, 1980, Tennessee River filed this action in the Chancery Court for Davidson County and obtained a temporary restraining order staying the arbitration proceedings pending judicial determination of its right to revoke the arbitration agreement. Eichleay filed a motion to dissolve the temporary restraining order and to stay judicial proceedings pending arbitration.

After an oral hearing, the Chancellor issued a memorandum opinion in which he denied the application for a temporary injunction, granted Eichleay's motion to dissolve the temporary restraining order, and stayed judicial proceedings, holding: (i) the contract in dispute is one "involving commerce" within the meaning of the Act; (ii) that the Act applied to every contract involving interstate commerce; and (iii) that agreements to arbitrate, contained in such contracts, are valid, irrevocable and enforceable.

The Chancellor held that the congressional power to regulate commerce as expressed in the Act was the supreme law of the land and superseded any common law of Tennessee in conflict therewith. An Order was entered in Chancery Court, in accordance with the memorandum opinion, denying plaintiff's application for temporary injunction.

Plaintiff moved the court to grant an interlocutory appeal pursuant to Rule 9(b) of the Rules of Appellate Procedure and the Chancellor entered an order granting plaintiff's application. The following issues were certified on appeal:

(1) Whether, in an action in a state court, an agreement to arbitrate contained in a contract involving interstate commerce is binding, enforceable and irrevocable by virtue of the United States Arbitration Act and the supremacy clause of the United States Constitution and

(2) Whether the Court abused its discretion, or otherwise erred, in declining to limit the scope of the issues to be submitted to arbitration, concluding that the scope of arbitrable issues was, initially, a question to be determined by the arbitrators.

The Court of Appeals granted the interlocutory appeal and remanded the cause to the Chancellor for the limited purpose of consideration and disposition of an application for stay of arbitration pending appeal. Application for stay of arbitration was denied on June 10, 1980. The two issues certified by the Chancellor were argued before the Court of Appeals, Western Section, sitting at Nashville and that court reversed the Chancellor's decree and remanded the matter for further proceedings. We then granted permission to appeal to this Court.

■ The Chancellor determined that the contract between the parties was one "involving commerce" within the meaning of the Act. The Act provides that "a written provision in any maritime transaction or contract evidencing a transaction *involving commerce* to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable and enforceable." Tennessee River asserts that the expansion project "affects" commerce but claims that these "contacts" with interstate commerce do not "evidence a transaction involving commerce" and are not sufficient to invoke the provisions of the Act.

The extent to which this contract involves commerce is clear. The contract exceeds $15,000,000.00 and is between two Delaware corporations; the plaintiff has its home office in Illinois, whereas, the defendant's home office is in Pennsylvania. The materials used, the labor employed, and the subcontractors involved, in substantial part, came to the project from outside Tennessee. Eichleay purchased substantial quantities of materials and supplies from vendors in at least 26 states; and 34 per cent of all materials and supplies purchased by Eichleay were from out-of-state vendors. There is ample basis in the record to support the conclusion that the contract was one "involving commerce."

The Court of Appeals, relying upon two landmark arbitration cases, *Robert Lawrence Co. v. Devonshire Fabrics, Inc.*, 271

F.2d 402 (2d Cir. 1959), *cert. granted*, 362 U.S. 909, 80 S.Ct. 682, 4 L.Ed.2d 618, dismissed under Rule 60, 364 U.S. 801, 81 S.Ct. 27, 5 L.Ed.2d 37 (1960), and *Prima Paint Corp. v. Flood and Conklin*, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1977), held that the federal Act does not supersede state law in this instance and refused to require enforcement of the arbitration provision of this contract.

In the *Robert Lawrence* case the court interpreted the scope of an arbitration clause more broadly than the state rule would have permitted. The court held that an arbitration clause was "separable" from the rest of the contract and, therefore, was not placed in issue by a general allegation of fraud in the inducement. The plaintiff had contracted to purchase fabric from the defendant. The parties agreed to arbitrate "(a) any complaint, controversy or question which [might] arise with respect to [the] contract." *Id.* at 404. But the plaintiff claimed that the purchase agreement had been procured by defendant's fraudulent misrepresentations and sued in federal court for damages. The defendant claimed that the agreement to arbitrate was valid and the court should stay court proceedings pending an arbitrator's resolution of the issue of fraud. New York's contract law would have taken the issue of fraud out of the hands of the arbitrator, and, instead, have required the court to decide the matter. In determining whether the validity of an arbitration clause in a contract evidencing a transaction involving commerce should be governed by the federal act or by state law, the Second Circuit Court of Appeals concluded that the Act creates a body of substantive federal law that encompasses all of the legal issues surrounding arbitration clauses; it does not require any reference to state rules for a decision; the Act is a declaration of national substantive law applicable equally in state and federal courts. *Id.* at 407. The court noted that the Act is based on Congress' undisputed substantive powers over commerce and maritime matters; and, held that the strong language found in Section 2 of the Act and the Act's "liberal policy of pro-moting arbitration," made the arbitration clause a separable and enforceable contract, apart from the purchase contract. Although the arbitration provision was contained in and was part of the purchase contract, the issue of fraud in the purchase agreement was nonetheless arbitrable.

In *Prima Paint*, the facts were almost identical to the facts in *Robert Lawrence*.

Prima Paint contracted to purchase a business from Flood and Conklin. The contract included an agreement by which Flood and Conklin promised not to compete with Prima Paint and also an arbitration clause. Shortly after commencing performance under the contract, Prima Paint alleged that Flood and Conklin had fraudulently induced the contract. When Flood and Conklin was notified of this allegation, it responded with a notice to arbitrate under the contract. Prima Paint, however, sought to enjoin arbitration, claiming that the fraud tainted the entire contract. Reaching the same result as the court in *Robert Lawrence*, the Court held that the arbitration clause was separable from the main contract. It ruled that an arbitrator, not a court, should determine whether the purchase agreement containing the arbitration agreement had been induced by fraud. In reaching this conclusion, however, the court declined to follow the theory advanced in *Robert Lawrence*; it relied upon an interpretation of Section 4 of the federal Act, which states that a court shall order arbitration if "the making of the agreement for arbitration or the failure to comply herewith is not an issue." The making of an arbitration agreement is put into issue by allegation of defects in the arbitration agreement itself, but not by an allegation of defects in the underlying purchase agreement. The Court agreed with the *Robert Lawrence* case that an arbitration agreement is separable from the contract within which it is contained. When the action is brought in *federal court* based on diversity jurisdiction, the question of *separability* is one of federal law rather than state law. Since the federal arbitration statute is based upon incontestable federal foundations of "control over interstate com-

merce and over admiralty," Congress may prescribe how *federal courts* are to conduct themselves with respect to subject matter over which congress plainly has power to legislate. *Prima Paint* did not address whether the federal Act pre-empts state law in a state court.

■ The majority rule in other state jurisdictions has become that the Act controls the enforceability of arbitration clauses in contracts being litigated in state court.[2] 95 A.L.R.3d 1145, § 4(a) at 1158 (1979). These jurisdictions recognize that *Prima Paint* holds that the Act pre-empts state law in federal court, but the language of *Prima Paint* supports the holding that the Act also pre-empts state law in state courts. The court in *Prima Paint* noted "it is clear beyond dispute that the federal arbitration statute is based upon and confined to the incontestable federal foundations of 'control over interstate commerce and over admiralty.'" 87 S.Ct. at 1806. These courts have noted that the Act is binding not only on federal courts but on state courts under the supremacy clause, United States Constitution Art. VI, Clause 2.[3] Where there is no independent federal subject matter jurisdiction and the arbitration clause satisfies 9 U.S.C. §§ 1 and 2, the parties must litigate their claims in state courts, but their rights will be determined under the Act. To rule otherwise would permit and even encourage forum shopping, prevent and undermine the need for nationwide uniformity in the interpretation and application of arbitration clauses in foreign and interstate transactions, and permit individuals to circumvent the national law relating to arbitration agreements called for by the Federal Arbitration Act. *Rederi v. Dow Chemical Co.,* 25 N.Y.2d 576, 307 N.Y.S.2d 660, 255 N.E.2d 774 (1970), *cert. denied* 398 U.S. 939, 90 S.Ct. 1844, 26 L.Ed.2d 272. When a trans-

action clearly involves interstate commerce, the Act should apply equally in state and federal courts and the parties should not be able to render it inapplicable by providing for arbitration under the laws of a particular state. *Mamlin v. Susan Thomas, Inc.,* 490 S.W.2d 634 (Tex.Civ.App.1973).

*Burke County Public Schools Bd. of Education v. The Shaver Partnership,* 303 N.C. 408, 279 S.E.2d 816 (1981), is the most recent decision addressing this issue by a state supreme court. In *Burke County,* the court held that a contract evidencing a transaction involving commerce which contains an arbitration provision will be enforced in state court pursuant to the federal Act. The court noted that applying the Act pursuant to the supremacy clause of the U. S. Constitution, furthers the congressional intent of making available to the business community the benefits of arbitration while simultaneously relieving crowded state court dockets. Both federal and state courts should favor arbitration as an economical form of dispute resolution which helps relieve overburdened court dockets. Further it promotes uniformity where the parties have agreed to arbitrate and discourages forum shopping.

The supremacy clause, coupled with the sound judicial policy of discouraging unfair forum shopping, compels us to adopt the majority rule.

The minority rule encourages unfair forum shopping because a litigant can sometimes escape his contractual obligation to arbitrate by instituting a suit in state rather than in federal court. *Merrill Lynch, Pierce, Fenner and Smith, Inc. v. Haydu,* 637 F.2d 391, 395 (5th Cir. 1981). The existence of this right and the result of a case should not depend on whether the case is before a state or federal tribunal. In the

**2.** *Cf. Pullman, Inc. v. Phoenix Steel Corp.,* 304 A.2d 334 (Del.Super.Court 1973); *Wilson and Company v. Fremont Cake and Meal Co.,* 153 Neb. 160, 43 N.W.2d 657, *cert. denied* 342 U.S. 812, 72 S.Ct. 25, 96 L.Ed. 614.

**3.** The supremacy clause of the U. S. Constitution provides that:

"This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

case at bar, it is mere coincidence that two out-of-state litigants happen to be incorporated in the State of Delaware. These parties were, therefore, barred from seeking relief in the federal courts because they could not assert diversity jurisdiction. This mere quirk of identity in place of incorporation should not be determinative of the outcome. The Act by virtue of the supremacy clause must be treated as state law with respect to any contract evidencing a transaction involving commerce as defined by the Act.

The Act has been held to be substantive rather than procedural and equally applicable in state and federal courts. *See Mamlin v. Susan Thomas, supra* at 637. The Federal Act is not altered by the contractual provisions calling for application of Tennessee law.

Under the supremacy clause of the United States Constitution, Art. VI, Clause 2, federal statutes enacted pursuant to the United States Constitution are the supreme law of the land and supersede inconsistent state laws. The Act was enacted pursuant to the commerce clause of the United States Constitution and supersedes inconsistent state law. *Merrill. Lynch, Pierce, Fenner and Smith, Inc. v. Haydu, supra.* Section 2 of the Federal Arbitration Act makes an arbitration provision in an agreement involving interstate commerce "valid, irrevocable, and enforceable" unless the agreement would be revocable for a reason at law or in equity. The supremacy clause resolves any inconsistency between the two laws in favor of the federally created right and subordinates Tennessee state law to the supreme law of the land. We, therefore, hold that Tennessee courts must recognize and apply the Federal Arbitration Act to interstate commerce contracts.

Fairness, logic, and constitutional constraints require us to enforce federal rights in state courts whenever Congress allows. Congress has allowed state courts to enforce federal arbitration rights, and has made state courts the exclusive forum for vindication of those rights except in those situations when the litigant can invoke federal jurisdiction on some independent ground. We should not and cannot make the substance of a federal right dependent upon the fortuity of the existence of an independent ground of federal jurisdiction.

We are asked to overrule *Meirowsky v. Phillips*, 222 Tenn. 112, 432 S.W.2d 885 (1968), in which this Court upheld the common law which provides that a party can revoke an agreement to arbitrate at any time before a valid award has been rendered by arbitrators. With respect to a contract in interstate commerce, this holding is contrary to Section 2 of the federal Act which makes arbitration agreements "valid, irrevocable and enforceable save upon such contracts as exist at law or in equity for the revocation of any contract." However, it is not necessary in this case that we determine whether or not *Meirowsky* has continued vitality with respect to a contract to arbitrate future disputes in a contract not involving interstate commerce and we decline to do so.

The decision of the Court of Appeals is reversed and arbitration proceedings pursuant to the contract should be commenced to determine the validity of the claim asserted. Costs incurred in this Court are taxed equally against the plaintiff and the defendants.

HARBISON, C. J., and FONES, COOPER and DROWOTA, JJ., concur.