MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., Petitioner,

v.

Sarah Wall Stephenson SHADDOCK, William F. Stephenson, as Personal Representative of the Estate of Audrey J. Stephenson, and Scott Webster Stephenson, Respondents.

MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., Petitioner,

v.

William F. STEPHENSON, Respondent.

Nos. 92 Civ. 8115 (WCC), 92 Civ. 8116 (WCC).

United States District Court, S.D. New York.

May 20, 1993.

Orrick, Herrington & Sutcliffe, New York City (Lawrence E. Fenster, of counsel), for petitioner.

Vinton, Waller, Slivka & Panasci, Richard P. Slivka, Patrick D. Vellone, Denver, CO, Brandeis, Bernstein & Wasserman by Katherine Nathan, New York City, for respondents Scott Webster Stephenson, William F. Stephenson, as Personal Representative of the Estate of Audrey J. Stephenson and Sarah Wall Stephenson Shaddock.

Cohen Brame & Smith, P.C., Jeffrey L. Smith, Marisa L. Williams, Denver, CO, Brandeis, Bernstein & Wasserman by Katherine Nathan, New York City, for respondent William F. Stephenson.

## OPINION AND ORDER

WILLIAM C. CONNER, District Judge.

These two related cases were consolidated in this Court upon removal from New York State Supreme Court under 28 U.S.C. § 1446. Petitioner Merrill Lynch, Pierce, Fenner & Smith Inc., ("Merrill Lynch"), moves for an order permanently staying the arbitration proceedings initiated by respondents before the National Association of Securities Dealers, Inc. ("NASD"), on or about September 22, 1992. Respondents move for dismissal pursuant to Rule 12(b)(2), Fed. R.Civ.P., for lack of personal jurisdiction, and under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons discussed below, respondents' motion to dismiss for want of personal jurisdiction is denied. Merrill Lynch's petition for an order staying arbitration is also denied and consequently respondents' motion to dismiss under Rule 12(b)(6) is granted.

## BACKGROUND

The two arbitrations that are the subject of the actions consolidated in this Court are classic "Black Monday" cases. Respondents' claims are based on trading in uncovered equity options, beginning in 1985 and 1986, through accounts with petitioner Merrill Lynch, that ultimately resulted in respondents suffering substantial losses on October 19, 1987. Respondents allege causes of action for breach of fiduciary duty, negligent supervision, unsuitable trading, churning, federal and state securities violations, fraud, and negligent misrepresentation.

Respondents' association with Merrill Lynch began in 1977 when respondent Stephenson entered into a relationship with Robert Swartz, a registered representative in Merrill Lynch's Denver office. Respondents, none of whom are New York residents, assert that their customer relationship with Merrill Lynch was maintained exclusively through Merrill Lynch's Denver office and that respondents had no contact with the State of New York or Merrill Lynch's New York offices either directly or via telephone communications in connection with any of the transactions that form the basis of respondents' claims. Respondents maintain that their only relevant contact with New York occurred in September 1992, when, in order to initiate arbitration proceedings before the NASD, respondents were required by NASD rules to file their claims initially with the NASD principal offices in New York. The claims remain before the NASD in New York through the pleading stage, after which they will be sent to the NASD regional offices in Denver, selected by respondents as the suitable location for arbitration of their claims.

Respondents' Customer Agreement with Merrill Lynch—ostensibly the standard contract form used by Merrill Lynch—contains the following arbitration clause:

11. Agreement to Arbitrate Controversies

It is agreed that any controversy between us arising out of your business or this agreement shall be submitted to arbitration conducted under the provisions of the Constitution and Rules of the Board of Governors of the New York Stock Ex-change, Inc., or pursuant to the Code of Arbitration Procedure of the National Association of Securities Dealers, Inc., as the undersigned may elect. If the controversy involves any security or commodity transaction. or contract related thereto executed on an exchange located outside the United States, then such controversy shall, at the election of the undersigned, be submitted to arbitration conducted under the constitution of such exchange or under the provisions of the Constitution and Rules of the Board of Governors of the New York Stock Exchange, Inc., or the Code of Arbitration Procedure of the National Association of Securities Dealers, Inc. Arbitration must be commenced by service upon the other of a written demand for arbitration or a written notice of intention to arbitrate, therein electing the arbitration tribunal. In the event the undersigned does not make such designation within five (5) days of such demand or notice, then the undersigned authorizes you to do so on behalf of the undersigned.

After the arbitration clause appears the following choice-of-law provision:

12. The Laws of the State of New York Govern

This agreement and its enforcement shall be governed by the laws of the State of New York; shall cover individually and collectively all accounts which the undersigned may open or reopen with you, and shall enure to the benefit of your successors whether by merger, consolidation or otherwise, and assigns, and you may transfer the accounts of the undersigned to your successors and assigns and this agreement shall be binding upon the heirs, executors, administrators, successors and assigns of the undersigned.

After respondents initiated arbitration proceedings before the NASD, Merrill Lynch petitioned New York State Supreme Court, County of New York, seeking a permanent stay of the arbitrations pursuant to New York C.P.L.R. §§ 7502 and 7503, on grounds that respondents' claims were barred by applicable statutes of limitations. Respondents removed the actions to this Court on the basis of diversity jurisdiction, and now move

for dismissal on grounds of lack of personal jurisdiction. Merrill Lynch moves to stay permanently the pending arbitration proceedings, to which respondents reply with a cross-motion to dismiss for failure to state a claim upon which relief can be granted.

## DISCUSSION

### I. *Motion to Dismiss For Lack of Personal Jurisdiction*

■ The primary basis advanced by petitioner for the assertion of personal jurisdiction over respondents is grounded in the arbitration clause contained in Merrill Lynch's Customer Agreement signed by respondents. By virtue of agreeing to arbitrate "any controversy" in a New York forum (under the auspices of either the NYSE or the NASD), petitioner maintains that respondents have effectively consented to personal jurisdiction in the New York courts.

Respondents initially claim that the arbitration clause is not a "choice-of-forum" provision but "simply a choice-of-law" provision so that respondents' consent to jurisdiction before a New York arbitral forum cannot support a finding of consent to personal jurisdiction in New York courts. In attempting to demonstrate that the arbitration provision does not subject respondents to the Court's jurisdiction, respondents misleadingly quote both the arbitration provision and the choice-of-law provision as if they were one clause in the contract and improperly assert that the two clauses are simply one choice-of-law provision. Respondents then cite cases standing for the proposition that a choice-of-law provision is not sufficient to confer personal jurisdiction.

Respondents tactic is unavailing. Even a quick glance at the Customer Agreement reveals that the arbitration provision, designated with the heading "Agreement to Arbitrate Controversies," stands separate and distinct from the choice-of-law provision, designated with the heading "The Laws of the State of New York Govern." Under the arbitration provision, respondents have clearly consented to arbitrate the current controversy before a panel of either the NYSE or the NASD. The only remaining question is

whether consent to arbitrate before one of these two panels is sufficient basis for inferring consent to personal jurisdiction in New York courts.

It is well settled that forum-selection clauses are regularly enforced as valid consents to jurisdiction in a particular forum under the principles articulated in *Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). *See Luce v. Edelstein*, 802 F.2d 49, 57 (2d Cir.1986); *Maritime Ventures Intl., Inc. v. Caribbean Trading & Fidelity, Ltd.*, 689 F.Supp. 1340, 1348 (S.D.N.Y.1988). An arbitration agreement is a special type of forum-selection clause, and is subject to the same principles. *Maritime Ventures Intl.*, 689 F.Supp. at 1348 (citing *Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 519, 94 S.Ct. 2449, 2456, 41 L.Ed.2d 270 (1974)). Thus, agreements to arbitrate in a particular forum have been held to constitute consent to personal jurisdiction in the courts of that forum. *Maritime Ventures Intl.*, 689 F.Supp. at 1348 (citing *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lecopulos*, 553 F.2d 842, 844 (2d Cir.1977); *see also Intermeat, Inc. v. American Poultry, Inc.*, 575 F.2d 1017, 1023 (2d Cir.1978); *Babitt v. Frum*, 606 F.Supp. 680, 682 (S.D.N.Y.1985); *Merrill Lynch v. Noonan*, 1992 WL 196741, *2–3 (S.D.N.Y.1992); *Merrill Lynch v. Lorey*, Index No. 12997/91 (N.Y.Sup.Ct.1992).

Respondents do not take issue with these principles. Rather, respondents argue that a party may only be deemed to have consented to personal jurisdiction in the courts of a particular forum where the party had contracted to arbitrate "in a specified geographical location." According to respondents, consent to personal jurisdiction in New York courts may not be found where the parties have merely agreed to arbitrate before the NYSE or NASD; rather the parties must specifically agree that arbitration will be conducted in New York. Indeed, in most of the cases cited by petitioner finding consent to personal jurisdiction in a particular forum, the court noted that the parties had contractually agreed to conduct arbitration proceedings in a particular city or location within that forum. *See, e.g., Scherk v. Alberto–Culver Co.*, 417 U.S. at 508–09, n. 1, 94 S.Ct.

at 2451–52, n. 1; *Intermeat, Inc.*, 575 F.2d at 1023; *Maritime Ventures Intl.*, 689 F.Supp. at 1345–46. In the instant case, although the parties have contracted to arbitrate controversies under the aegis of the NYSE or NASD, both of which are principally located in New York, the contract does not require that arbitration proceedings actually take place in New York. And although respondents have initiated arbitration proceedings by filing with the NASD office in New York as required, respondents have selected the NASD regional office in Denver as the site of the arbitration hearings. Consequently, respondents maintain that they cannot be deemed to have consented to personal jurisdiction in New York.

Petitioner indicates it has never claimed that the basis for invoking personal jurisdiction over respondents was the choice of a "particular place" or "specified geographical location" where arbitration hearings would actually proceed. Merrill Lynch maintains that under the authorities it cites, an agreement to conduct arbitration proceedings in a "specified situs" is *not* the sine qua non of a finding of consent to personal jurisdiction; rather, "an agreement to arbitrate under the auspices of a New York forum," regardless of where the ultimate "situs of the arbitration hearings will be," is sufficient to confer personal jurisdiction in a New York court. According to petitioner, because the parties have agreed to arbitrate all controversies before the NYSE or NASD, both of which are "unquestionably" New York fora, and because the respondents decision to proceed before the NASD necessitates initiating their claims in New York, respondents must be deemed to have consented to personal jurisdiction in New York.

Merrill Lynch relies principally on three cases, *Merrill Lynch v. Lecopulos*, 553 F.2d 842 (2d Cir.1977), *Merrill Lynch v. Noonan*, 1992 WL 196741 (S.D.N.Y.1992), and *Merrill Lynch v. Lorey*, Index No. 12997/91 (N.Y.Sup.Ct.1992), where contractual arbitration provisions virtually identical to the ones currently before this Court were held to

constitute consent to personal jurisdiction in New York. Each of these cases involved an arbitration provision from a Merrill Lynch standard Customer Agreement and in none of these cases did the arbitration provision require that arbitration hearings ultimately proceed in New York.

In the leading case of *Merrill Lynch v. Lecopulos*, the arbitration provision required controversies to be "submitted to arbitration conducted under the provisions of the Constitution and Rules of the Board of Governors of the New York Stock Exchange."[1] 553 F.2d at 843–44, n. 1. The Second Circuit in *Lecopulos* found this provision amounted to consent to personal jurisdiction in New York courts:

> In addition to choosing the jurisdiction in which disputes are to be litigated, the parties can also designate a specific type of forum, e.g. arbitration, *see Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 519 [94 S.Ct. at 2449, 2556] (1974), in appropriate cases. Against this background, Merrill Lynch argues that *the agreement to resolve disputes by arbitration in New York constituted consent to personal jurisdiction in New York.* Merrill Lynch is correct. In *Victory Transport Inc. v. Comisaria General*, 336 F.2d 354, 363 (2d Cir.1964), *cert. denied*, 381 U.S. 934 [85 S.Ct. 1763, 14 L.Ed.2d 698] (1965) we said: By agreeing to arbitrate in New York, where the United States Arbitration Act makes such agreements specifically enforceable, the Comisaria General must be deemed to have consented to the jurisdiction of the court that could compel the arbitration proceeding in New York. To hold otherwise would be to render the arbitration clause a nullity. (Citing cases) (Emphasis added).

553 F.2d at 844. The Second Circuit apparently considered a contractual provision requiring arbitration under the aegis of the NYSE as constituting an "agreement to resolve disputes by arbitration in New York." The NYSE, like the NASD, has its principal arbitration offices in New York City through

---

1. Unlike the clause in Merrill Lynch's current standard Customer Agreement, the arbitration clause in *Lecopulos* did not give the customer a

choice of arbitral entities between the NYSE and the NASD.

which all arbitrations are initially processed. *See Noonan*, 1992 WL 196741 at *2, *3. Petitioner argues that because the Customer Agreement in *Lecopulos* did not contain any reference to the place where arbitration hearings were ultimately to be held, the Second Circuit's decision can only mean that an agreement to submit disputes to the NYSE—"a New York forum"—constitutes consent to personal jurisdiction in New York. Respondents maintain that *Lecopulos* stands only for the proposition the Second Circuit specifically articulated: that an "agreement to resolve disputes by arbitration in New York constituted consent to personal jurisdiction in New York." Why the Second Circuit found consent to jurisdiction in *Lecopulos* without New York being specified in the contract as the location for the arbitration proceedings is a question respondents are admittedly unable to answer.

The issue was addressed by Judge Kram in *Merrill Lynch v. Noonan*, 1992 WL 196741 (S.D.N.Y.1992), within the context of an arbitration clause offering the Merrill Lynch customer more than one arbitral entity before which to proceed. The Agreement in *Noonan* did not specify a geographic location where the arbitration hearings would take place. Nevertheless, the Court found the parties had consented to personal jurisdiction in New York:

> Moreover the Second Circuit has held that agreements to resolve disputes by arbitration in New York constitute consent to personal jurisdiction in New York. The court noted that to hold otherwise would be to render the arbitration clause a nullity. In this case, the Noonan Agreements provide for arbitration before 'the New York Stock Exchange, Inc., the American Stock Exchange, Inc., or arbitration facility provided by any other exchange, the National Association of Securities Dealers, Inc., or the Municipal Securities Rulemaking Board.' Although New York City is not specifically mentioned as a site in the Noonan Agreements, there are several references to New York City. First, the New York Stock Exchange and the National Association of Securities Dealers both have their principal arbitration offices in New York City where all arbitrations are initial-

ly processed. Moreover, Merrill Lynch has its principal place of business in New York. Thus the contract is akin to an arbitration agreement which states that the respondents will resolve their disputes by arbitration in New York. Accordingly, the Court finds that the Noonan Agreements constitute consent to personal jurisdiction in New York City.

1992 WL 196741, *3 (citations omitted). Petitioner emphasizes that the factors on which the *Noonan* court focused in finding consent to personal jurisdiction are also present in the instant case.

Finally, in *Merrill Lynch v. Lorey*, Index No. 12937/91 (N.Y.Sup.Ct.1992), a lower New York state court construed an agreement to arbitrate before the NASD as constituting consent to personal jurisdiction in New York. Whether the Court did so because it considered an agreement to submit disputes to an arbitral entity principally located in New York sufficient to confer personal jurisdiction, or because the Court simply assumed the parties had agreed that arbitration hearings would ultimately proceed in New York is unclear. From petitioner's perspective, however, the salient feature of *Lorey* lies in the fact that the parties were held to have consented to jurisdiction in New York, though the contract did not specifically indicate that arbitration hearings would take place in New York.

Under the authority of these decisions, we are constrained to hold that this Court has personal jurisdiction over respondents. The arbitration provision in the Merrill Lynch Customer Agreement with respondents is identical, or virtually identical, to the one facing the courts in *Lecopulos, Noonan,* and *Lorey*. The principal difference is that in *Lecopulos,* the contract required that arbitration proceed before the NYSE, whereas in the current controversy, respondents were offered a choice between the NYSE and the NASD, and chose to proceed before the NASD. Respondents are unable to explain why this distinction should be considered meaningful: like the NYSE, the NASD is principally located in New York and requires that arbitration be initiated by filing all claims in New York. *See Noonan*, 1992 WL

196741, *2, *3. In each of the cases, the court was faced with a contractual provision that required disputes to be submitted to a New York arbitral entity but did not specify the location where the arbitration hearings would ultimately proceed, and in each of these cases the provision was held to constitute consent to personal jurisdiction in New York. Respondents are unable to offer any rationale as to why we should not be bound by the Second Circuit's decision in *Lecopulos* or persuaded by the decisions rendered in *Noonan* and *Lorey.*

██ Respondents also contend that even if the arbitration provision is deemed to constitute consent to personal jurisdiction, the Court must still engage in long-arm analysis under N.Y. CPLR § 302 before asserting jurisdiction. Respondents are wrong. *See Lecopulos,* 553 F.2d at 844 (no need to consider whether § 302 confers jurisdiction where jurisdictional argument based upon consent to arbitrate deemed determinative).[2] Consequently, respondents' motion to dismiss for want of personal jurisdiction is denied.

## II. *Motion to Stay Arbitration Permanently*

Petitioner contends that respondents' claims are time-barred by various statutes of limitations,[3] and accordingly petitions the Court to stay permanently the two arbitration proceedings before the NASD. Respondents counter that because a binding agreement to arbitrate controversies exists between the parties, all statute of limitations questions must be submitted to an arbitrator for determination. Consequently, respondents insist Merrill Lynch's petition must be dismissed for failure to state a claim upon which relief can be granted, citing *Louis Dreyfus Corp. v. Cook Indus., Inc.,* 505 F.Supp. 4, 6 (S.D.N.Y.1980).

██ The primary issue posed by these motions is whether federal law or New York arbitration law applies to the current controversies. Merrill Lynch argues for the application of New York arbitration law, whereas respondents maintain that federal arbitration law must be invoked where a controversy involves interstate commerce. The issue is of dispositive importance. Under New York law, upon the express authority of N.Y. CPLR §§ 7502 and 7503, a court is permitted to stay actions due to failure to comply with limitations periods,[4] *see County of Rockland v. Primiano Constr. Co.,* 51 N.Y.2d 1, 431 N.Y.S.2d 478, 482 & n. 2, 409 N.E.2d 951, 955 & n. 2 (1980); *Paver & Wildfoerster v. Catholic High School Assn.,* 38 N.Y.2d 669, 382 N.Y.S.2d 22, 24, 345 N.E.2d 565, 567 (1976); *Merrill Lynch v. Lorey,* Index No. 12997/91 (N.Y.Sup.Ct.1992), whereas under federal law, "*any* limitations defense—whether stemming from the arbitration agreement, arbitration association rule, or state statute—is an issue to be addressed by the arbitrators." *Shearson Lehman Hutton, Inc. v. Wagoner,* 944 F.2d 114, 121 (2d Cir.1991) (emphasis in original) (citing *Conticommodity Serv. v.*

---

2. The cases referred to by respondents in support of this theory are cited out of context. *See, e.g., Intermeat, Inc. v. Am. Poultry, Inc.,* 575 F.2d 1017, 1023 (2d Cir.1978) (fact that defendant had consented to arbitration in New York in previous transactions considered a factor in assessing whether court may assert quasi-in-rem jurisdiction over nonresident defendant); *ACLI Intern. v. E.D. & F. Man (Coffee) Ltd.,* 76 A.D.2d 635, 430 N.Y.S.2d 858 (1980) (same).

3. Merrill Lynch relies on assorted limitations periods from New York, Colorado, and federal law to support its contention. Respondents insist that their claims are not time-barred under the appropriate limitations periods.

4. N.Y.CPLR § 7502(b) provides that:
"If, at the time that a demand for arbitration was made or a notice of intention to arbitrate was served, the claim sought to be arbitrated would

have been barred by limitation of time had it been asserted in a court of the state, a party may assert the limitation as a bar to the arbitration on an application to the court as provided in section 7503 or subdivision (b) of section 7511. The failure to assert such bar by such application shall not preclude its assertion before the arbitrators, who may, in their sole discretion, apply or not apply the bar."
   N.Y. CPLR § 7503(b) provides that:
"Subject to the provision of subdivision (c), a party who has not participated in the arbitration and who has not made or been served with an application to compel arbitration, may apply to stay arbitration on the ground that a valid agreement was not made or has not been complied with or that the claim sought to be arbitrated is barred by limitation under subdivision (b) of section 7502."

*Philipp & Lion,* 613 F.2d 1222, 1224–25 (2d Cir.1980)); *see also, Reconstruction Fin. Corp. v. Harrisons & Crosfield, Ltd.,* 204 F.2d 366 (2d Cir.), *cert. denied,* 346 U.S. 854, 74 S.Ct. 69, 98 L.Ed. 368 (1953). The law in this Circuit is clear: "[o]nce it is determined that parties to a contract have created an enforceable arbitration clause, then the policies inherent in the Federal Arbitration Act dictate that 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.' " *McDonnell Douglas Fin. v. PA Pwr. & Light Co.,* 858 F.2d 825, 831 (2d Cir.1988) (quoting *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 941–42, 74 L.Ed.2d 765 (1982)).

██ Merrill Lynch initially intimates that the Federal Arbitration Act (FAA) may not apply to this case because federal jurisdiction is predicated upon diversity and hence the Court is obliged to employ state arbitration law.[5] This proposition lacks merit. It is well-settled that the FAA applies where federal subject matter jurisdiction is predicated upon diversity, *see Barbier v. Shearson Lehman Hutton, Inc.,* 948 F.2d at 117, 120 (2d Cir.1991); *Moses H. Cone Mem. Hosp.,* 460 U.S. 1, 25 n. 32, 103 S.Ct. 927, 942 n. 32, 74 L.Ed.2d 765 and where the contract calling for arbitration concerns a transaction involving interstate commerce. 9 U.S.C. § 2; *Barbier,* 948 F.2d at 120. There is little dispute as to the interstate nature of the transactions underlying this controversy: they involve investors from Colorado, a New York financial institution, and the execution of trades involving financial instruments on a national exchange. On this ground at least, respondents' reliance on the FAA is unimpeachable.

██ The FAA comprises a "body of federal substantive law of arbitrability, applicable to any arbitration agreement within the

coverage of the Act." *Moses H. Cone Mem. Hosp.,* 460 U.S. at 24, 103 S.Ct. at 941. Once it is determined that a dispute is covered by the Act, federal law as set forth in the Act and in court decisions construing it governs the scope and interpretation of the agreement. *Cook Chocolate Co. v. Salomon, Inc.,* 684 F.Supp. 1177, 1182 (S.D.N.Y.1988). That the Act and subsequent court decisions embrace a clear federal policy in favor of arbitration is now virtually axiomatic and, thus, the numerous decisions underscoring a strong presumption in favor of arbitrability need not be recounted here at length. It suffices to state that where the agreement contains a "broad" arbitration clause, such as the one at issue here, purporting to submit to arbitration "any controversy between us arising out of your business or this agreement," the strong presumption in favor of arbitrability has been held to apply with even greater force. *Wagoner,* 944 F.2d at 121; *McDonnell Douglas Finance,* 858 F.2d at 832 (citing *AT & T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 650, 106 S.Ct. 1415, 1419, 89 L.Ed.2d 648 (1986)). Under this presumption, any doubts as to the arbitrability of particular issues must be resolved in favor of arbitration; moreover, statute of limitations defenses have been specifically held by the Second Circuit to be an issue for the arbitrators. *Wagoner,* 944 F.2d at 121.

██ Against this background, Merrill Lynch argues that the existence of a choice-of-law provision in the Customer Agreement, designating that "[t]his agreement and its enforcement shall be governed by the laws of the state of New York," requires this Court to look solely to New York arbitration law and thereunder to determine if respondents' claims are time-barred under the various statutes of limitations referenced by petitioner. Merrill Lynch relies heavily on the Supreme Court's decision in *Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford*

---

5. Petitioner's position on this point is vague. Merrill Lynch's initial brief, in discussing the relevance of the FAA remarks that "this Court, sitting in a diversity action must apply state law." In a subsequent submission, however, Merrill Lynch states it "does not contend that the

Court must apply New York law *solely* because this is a diversity action," and later acknowledges that the Second Circuit, in *Barbier v. Shearson Lehman Hutton, Inc.,* 948 F.2d 117, 120 (2d Cir.1991), found the FAA applicable where jurisdiction was based upon diversity.

*Jr. Univ.*, 489 U.S. 468, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989) to advance its position. In *Volt*, the appellant initiated arbitration proceedings pursuant to a contract clause, while the appellee filed suit in California Superior Court. The parties' contract contained a provision indicating that California law would govern its enforcement.[6] The Superior Court stayed arbitration pursuant to a California arbitration rule permitting such a stay, and the state appellate court affirmed. The California Court held that because the parties' contract designated California law as applicable, California rules of arbitration should govern. The Supreme Court affirmed, holding that it would not disturb a state court ruling that the choice-of-law provision in the contract was intended by the parties to encompass California arbitration law. *Volt*, 489 U.S. at 474–76, 109 S.Ct. at 1253–54, 103 L.Ed.2d 488.[7] The Court explained:

> We do not think the [California] Court of Appeal offended the *Moses H. Cone* principle by interpreting the choice-of-law provision to mean that the parties intended the California rules of arbitration, including the § 1281.2(c) stay provision, to apply to their arbitration agreement. There is no federal policy favoring arbitration under a certain set of procedural rules; the federal policy is simply to ensure the enforceability, according to their terms, of private agreements to arbitrate. Interpreting a choice-of-law clause to make applicable state rules governing the conduct of arbitration—rules that are manifestly designed to encourage resort to the arbitral process—simply does not offend the rule of liberal construction set forth in *Moses H.*

*Cone*, nor does it offend any other policy embodied in the FAA.

489 U.S. at 476, 109 S.Ct. at 1254.

Based on *Volt*, petitioner argues that where a contract contains a choice-of-law provision specifying the application of New York law, the Court is bound to apply New York rather than federal arbitration law. Petitioner also cites *Fahnestock & Co., Inc. v. Waltman*, 935 F.2d 512, 517–19 (2d Cir. 1991), *cert. denied*, —— U.S. ——, 112 S.Ct 1241, 117 L.Ed.2d 474 (1992), and *Barbier v. Shearson Lehman Hutton, Inc.*, 948 F.2d 117, 121–22 (2d Cir.1991) in support of the proposition that the Second Circuit has "reaffirmed *Volt's* deference to state law" in instances where the parties' agreements so warrant. Both these cases applied New York state law to vacate the punitive damages portion of an arbitral award where New York law strictly prohibited such an award, and the parties' agreement had not specified that punitive damages may be granted. The two cases are relevant insofar as they underscore the principle discussed in *Volt* that parties are "generally free to structure their arbitration agreements as they see fit," and that the FAA requires only "that private agreements to arbitrate be enforced in accordance to their terms." *Barbier* 948 F.2d at 122 (quoting *Volt*, 489 U.S. at 478–79, 109 S.Ct. at 1255–56); *Fahnestock*, 935 F.2d at 518 (same). In *Barbier*, the case closest on point, the parties' contract contained a choice-of-law provision designating New York law as governing.[8] The district court had held that the choice-of-law provision implicated only New York substantive law and not New York arbitration law so that the arbitrators were not constrained by the New York prohibition on arbitral punitive damage

---

**6.** We take note that respondents flagrantly misstate the facts of *Volt*. Respondents represent that the agreement in *Volt* "explicitly" and "specifically" incorporated California rules of arbitration. In fact the choice of law provision only required that "the law of the place where the project is located" would govern. Indeed, the very issue before the California Court was whether this provision implicated California rules of arbitration as well as California substantive law.

**7.** The Supreme Court declined to review this holding of the California Court, noting that "the interpretation of private contracts is ordinarily a

question of state law, which this Court does not sit to review." 489 U.S. at 474, 109 S.Ct. at 1253.

**8.** Petitioner's representation of the parties' contract in *Fahnestock* as also containing a New York choice-of-law provision is inaccurate. Rather, the issue in *Fahnestock* was governed by state law because the Court, sitting in diversity, held that absent an agreement by the parties on the subject, federal substantive law did not preempt state law on the question of the propriety of a punitive damages award.

awards. In overturning this decision, the Second Circuit did not set aside the lower court's characterization of the choice-of-law provision as not implicating New York arbitration law. Rather, the Circuit Court held that the measure of damages was a matter of state substantive law so that the choice-of-law provision operated to preclude the arbitrators, under New York substantive law, from awarding punitive damages. *Barbier*, 948 F.2d at 122.

Respondents, on the other hand, maintain that this Court is bound by *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 121 (2d Cir.1991), a case that post-dates the Supreme Court's decision in *Volt* and that specifically addresses the issue before this Court: whether statute of limitations defenses are within the province of arbitrators or the Court. As in the instant case, the parties' contract in *Wagoner* contained a broad arbitration provision *and* a clause designating New York law as governing. 944 F.2d at 121. Despite the choice-of-law provision, the Court applied federal law to refer all limitations issues to the arbitrators. The Court's opinion did not refer to the Supreme Court's decision in *Volt*, or discuss why the choice-of-law provision did not require the Court to apply New York arbitration law and, under N.Y. CPLR §§ 7502 and 7503, decide the limitations issues itself.[9] The Court's holding, however, was unequivocal: "*any* limitations defense—whether stemming from the arbitration agreement, arbitration association rule, or state statute—is an issue to be addressed by the arbitrators." 944 F.2d at 121; *see also, Merrill Lynch v. Noonan*, 1992 WL 196741, *8–9 (S.D.N.Y.1992) (citing *Wagoner* as referring limitations issues to arbitrators in controversy involving a similar Merrill Lynch customer agreement). Respondents argue that *Wagoner* compels this Court to dismiss Merrill Lynch's petition and permit the NASD arbitration panel to address petitioner's limitations defenses.

Merrill Lynch struggles to skirt the holding in *Wagoner*: in addition to misstating the facts of the case [10], petitioner also maintains that the Second Circuit's holding "plainly is not controlling authority for a federal court" because the Circuit Court failed to address *Volt*, relying entirely on pre-*Volt* decisions, and also failed to refer to New York law. Merrill Lynch's difficulty in reconciling *Wagoner* with *Volt* stems from the expansive conclusion it seeks to draw from the Supreme Court's holding in *Volt*. Contrary to petitioner's suggestions, *Volt* does not stand for the proposition that any time an arbitration agreement contains a choice-of-law provision which does not expressly encompass state arbitration rules, such a provision, by operation of law, obliges a Court to apply state rather than federal arbitration law. Rather, the Court merely held that it would not disturb a state court's determination that the parties to the contract in *Volt* intended the choice-of-law provision to invoke California arbitration law. *See Volt*, 489 U.S. at 474–76, 109 S.Ct. at 1253–54. Justice Brennan's dissent in *Volt* underscored this distinction. The dissent noted it did not disagree with the majority's conclusion that the FAA does not pre-empt state arbitration rules where the parties to a contract have agreed to arbitrate according to those rules to the exclusion of federal arbitration law. 489 U.S. at 481 n. 4, 109 S.Ct. at 1257 n. 4. However, the dissent challenged the majority's unwillingness to review the state court's interpretation of the contract, concluding that the choice-of-law provision could not be held to implicate state arbitration law:

> It seems to me beyond dispute that the normal purpose of such choice-of-law clauses is to determine that the law of one State rather than that of another State will be applicable; they simply do not speak to any interaction between state and federal law. A cursory glance at standard con-

9. The parties in *Wagoner* may not have argued, as petitioner does here, that the choice-of-law provision required the Court to apply New York arbitration law rather than federal law.

10. Merrill Lynch conspicuously misrepresents the essential facts of *Wagoner* by repeatedly asserting that the *Wagoner* court was not faced

with an arbitration agreement specifying that New York law governed. In fact the relevant clause, quoted in full within the text of the Circuit Court's opinion, provided that the resolution of any controversy "shall be governed by the laws of the State of New York." 944 F.2d at 121.

flicts texts confirms this observation: they contain no reference at all to the relation between federal and state law in their discussions of contractual choice-of-law clauses.

*Volt,* 489 U.S. at 488, 109 S.Ct. at 1260 (Brennan, J., dissenting).

Since *Volt,* other federal courts confronting contractual language in contexts similar to that at issue here, have found that a choice-of-law provision did not require the Court to apply state rules of arbitration instead of federal arbitration law. *See Todd Shipyards Corp. v. Cunard Line, Ltd.,* 943 F.2d 1056, 1062 (9th Cir.1991) (federal rather than state arbitration rules apply, though contract contained New York choice-of-law provision); *Ackerberg v. Johnson,* 892 F.2d 1328, 1333–34 (8th Cir.1989) (Minnesota choice-of-law provision does not prevent arbitration of claims that are non-arbitrable under Minnesota law where such claims otherwise arbitrable under federal law); *Booth v. Hume Pub., Inc.,* 902 F.2d 925, 928–29 (11th Cir.1990) (in accordance with state law prevailing at time of contract negotiation, choice-of-law provision not intended to require application of state rather than federal arbitration law); *Appalachian Regional Healthcare, Inc. v. Beyt, Rish, Robbins Group, Architects,* 963 F.2d 373 (6th Cir.1992) (Table) (text in Westlaw) (choice-of-law provision does not operate to require application of state rather than federal arbitration law); *Barbier v. Shearson Lehman Hutton, Inc.,* 752 F.Supp. 151, 156–58 (S.D.N.Y.1990), (choice-of-law provision implicates only state substantive law and not state arbitration rules), *rev'd on other grounds,* 948 F.2d 117, 121–22 (2d Cir. 1991)[11].

Under general state law principles of contract interpretation, it is clear that at the time the parties entered into the agreement, New York courts considered choice-of-law provisions in arbitration agreements to designate only the substantive law to be applied by the arbitrators and not to displace application of federal arbitration law. *See Gold-*

*farb v. Goldfarb,* 86 A.D.2d 459, 450 N.Y.S.2d 212, 214 (1982) (contracts made by parties necessarily construed in light of the applicable law at time of execution); *Rothberg v. Loeb, Rhoades & Co.,* 445 F.Supp 1336, 1339 (S.D.N.Y.1978) (New York courts apply federal, not state, arbitration law where underlying transactions involve interstate commerce, even though contract contains New York choice-of-law provision); *Hornblower & Weeks–Hemphill Noyes, Inc. v. Csaky,* 427 F.Supp. 814, 818–19 (S.D.N.Y.1977) (contract contained New York choice-of-law provision; court "consulted" New York law and found that New York courts apply federal and not state arbitration law); *see also Buck Creek Indus. v. Beattle Mfg. Co.,* 96 Misc.2d 812, 409 N.Y.S.2d 575 (N.Y.Sup.Ct.1978); *A/S J. Ludwig Mowinckles Rederi v. Dow Chemical Co.,* 25 N.Y.2d 576, 307 N.Y.S.2d 660, 255 N.E.2d 774 (1970); *Aaacon Auto Transp. Inc. v. Newman,* 77 Misc.2d 1069, 356 N.Y.S.2d 171, 173 (1974); *Louis Dreyfus Corp. v. Cook Indus., Inc.,* 505 F.Supp. 4, 5–6 (S.D.N.Y.1980). Merrill Lynch's assertion that these cases are "expressly" overruled by *Volt* is incorrect. As discussed above, *Volt* does not dictate the result sought by petitioner—namely that every court must perforce assign the same interpretation to a contractual choice-of-law provision as that assigned by the California Court in *Volt.*

The numerous New York state cases cited by Merrill Lynch are largely inapposite: they do not involve courts construing a choice-of-law provision to require New York arbitration rules to be invoked where federal arbitration law would otherwise apply. *See, e.g., County of Rockland v. Primiano Constr. Co., Inc.,* 431 N.Y.S.2d 478 (1980); *Paver & Wildfoerster v. Catholic High School Assn.,* 38 N.Y.2d 669, 382 N.Y.S.2d 22, 345 N.E.2d 565 (1976); *Matter of United Nations Dev. v. Norkin Plumbing,* 45 N.Y.2d 358, 408 N.Y.S.2d 424, 380 N.E.2d 253 (1978); *Matter of Town of Greenburgh,* 125 A.D.2d 315, 508 N.Y.S.2d 599 (2d Dept.1986); *Aetna Cas. &*

---

**11.** As noted above, the Second Circuit in *Barbier,* 948 F.2d 117, did not set aside the district court's conclusion that the choice-of-law provision did not mandate application of New York arbitration law. Rather, the Court reversed on

the grounds that the state law at issue was incorrectly characterized by the lower court as arbitration law instead of New York substantive law which the court was required to apply under the choice-of-law provision.

*Sur. Co. v. Cochrane,* 64 N.Y.2d 796, 486 N.Y.S.2d 915, 476 N.E.2d 314 (1985). Respondents do not dispute that New York courts are entitled to apply N.Y. C.P.L.R. §§ 7502 and 7503 and thereunder rule upon issues of time-barred claims when dealing with contracts invoking only state arbitration law. Merrill Lynch most strenuously points to *Charles Schwab v. Altabet,* Index No. 2484/92 (N.Y.Sup.Ct.1992), a lower New York state court decision which does not advance petitioner's position very far. The parties' contract in *Altabet* contained a California choice-of-law provision and the petitioner argued that applicable California statutes of limitations barred respondents' claims. The New York court held that, despite the California choice-of-law provision, respondents' claims were subject to New York statutes of limitations. Moreover, the Court applied New York rather than California arbitration law, and, under N.Y. C.P.L.R. § 7502, decided most of the limitations issues, leaving a limitations question on an ERISA claim for the arbitrators.[12]

We also note that construing the choice-of-law provision to encompass New York rules of arbitration would result in the contract containing two potentially conflicting provisions: one, a broad arbitration provision, requiring "any controversy" that arises to be submitted to arbitration, and the other, a provision requiring disputes over compliance with limitations periods to be submitted to a court. We are naturally reluctant to strain to impose on a contract an interpretation that appears contrary to the weight of authority particularly where such an interpretation may also render the contract internally inconsistent or ambiguous.

For these reasons, we do not find that the choice-of-law provision in the parties' contract requires us to apply New York rules of arbitration in place of federal arbitration law. Hence, the Court is not compelled under N.Y. C.P.L.R. § 7502 and § 7503 to address petitioner's statute of limitation defenses. Rather, under the clear direction of the law in this circuit, these defenses must be submitted to the NASD arbitration panel for resolution. *Wagoner,* 944 F.2d at 121.[13] Consequently, Merrill Lynch's motion for a permanent stay of the pending arbitration proceedings is denied.

## CONCLUSION

For the foregoing reasons, the Court denies respondents' motion to dismiss for want of personal jurisdiction. Petitioner's motion for a permanent stay of the NASD arbitration proceedings is also denied and, as a result, the Court grants respondents' motion to dismiss Merrill Lynch's petition for failure to state a claim upon which relief can be granted.

SO ORDERED.

---

**12.** The state court believed there were factual issues concerning the point of time at which the respondent became aware of his ERISA claim. The Court considered these questions were best left to an arbitrator.

**13.** Merrill Lynch also points to decisions from the Third, Sixth and Seventh Circuits which, according to Merrill Lynch, suggest that "arbitrability and timeliness issues are undeniably for courts not arbitrators to decide." *See Paine-Webber Inc. v. Hartmann,* 921 F.2d 507, 510–514 (3rd Cir.1990); *Roney & Co. v. Kassab,* 981 F.2d 894, 897–900 (6th Cir.1992); *Edward D. Jones & Co. v. Sorrells,* 957 F.2d 509, 511–14 (7th Cir. 1992). First, this proposition runs directly counter to the rule in this Circuit requiring timeliness issues to be submitted to arbitration, as was expressly recognized by the Third and Sixth Circuits. *See Hartmann,* 921 F.2d at 512 (noting the abundant authority from other circuits that

time-bar defenses may be submitted to arbitration); *Kassab,* 981 F.2d at 898 (same). Second, the decisions cited involved time limitations imposed by the arbitral entity's own rules, compliance with which was required before a controversy could, by the express terms of the rules, be considered "eligible for submission to arbitration." The courts found this provision to constitute a substantive limitation on the life of the obligation to arbitrate, *see Sorrells,* 957 F.2d at 514, or an "eligibility" requirement, non-compliance with which prevented the obligation to arbitrate from arising, *see Hartmann,* 921 F.2d at 513; *Kassab,* 981 F.2d at 898–99. This eligibility requirement was explicitly differentiated from compliance with statutes of limitations, which remained for the arbitrators to decide. *Hartmann,* 921 F.2d at 513–14. We note that there is no allegation here that respondents have failed to comply with the NASD's similar "eligibility" requirements.