WESTMORELAND CAPITAL CORPORATION, Joseph M. Jayson, and Judith P. Jayson, Petitioners,

v.

George D. FINDLAY, and John F. Joyce, Respondents.

No. 95–CV–308A.

United States District Court,
W.D. New York.

Feb. 14, 1996.

Hodgson, Russ, Andrews, Woods & Goodyear, Robert J. Lane, Jr., Buffalo, NY, (Adam W. Perry, of counsel), for Petitioners.

Portnow, Little & Cicchetti, P.C., Burlington, VT (Samuel H. Press, of counsel [1]), for Respondents.

## DECISION AND ORDER

FOSCHIO, United States Magistrate Judge.

### *JURISDICTION*

The parties to this matter executed a consent to proceed before the undersigned on the pending motions to dismiss the complaint on February 13, 1996. The matter is presently before the court on Respondents' motion to dismiss the petition, dated July 27, 1995, and Petitioners' cross-motion for summary judgment, dated November 1, 1995.

### *BACKGROUND*

Petitioner, Westmoreland Capital Corporation ("Westmoreland"), is a New York corporation with a principal business of financial planning and investment counselling. Petitioners Joseph M. Jayson and Judith P. Jayson are the principals of Westmoreland. Respondents, George D. Findlay and John F. Joyce are individuals who sought investment

advice from Westmoreland, and acted on such advice. Petitioners, who filed their petition on April 20, 1995, have filed this petition, pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, seeking an order preliminarily and permanently enjoining an arbitration proceeding before the National Association of Securities Dealers, Inc. ("NASD") in which Respondents are charging Petitioners with various instances of securities fraud as allegedly committed by Westmoreland's employee, Terry King. Respondents filed their answer on July 28, 1995, interposing a counterclaim, based upon an agreement for arbitration between Petitioners and Respondents, seeking an order to compel arbitration.

On July 28, 1995, simultaneously with the filing of their answer, Respondents filed a motion to dismiss the petition on the grounds that the Federal Arbitration Act does not authorize the court to stay the arbitration, and that the court lacks jurisdiction to enjoin an arbitration on statute of limitations grounds under Rule 15 of the Code of Arbitration Procedure of the NASD.

On November 1, 1995, Petitioners filed a cross-motion for summary judgment seeking a permanent injunction barring Respondents from pursuing any claims in arbitration against Joseph Jayson or Judith Jayson, a permanent injunction barring Respondents from pursuing any arbitration proceedings on their claims based on applicable statute of limitations grounds, dismissal of Respondents' counterclaim, and denial of Respondents' motion to dismiss.

### *FACTS*

Respondents, George D. Findlay and John F. Joyce, are retired individuals who engaged Terry King, an employee of Westmoreland, to provide financial planning and advice.[2] King was employed as a registered

---

1. Although Mr. Press filed an entry of appearance on July 28, 1995, he has failed to follow the procedures set forth in Local Rules 83.1 and 83.2 for Attorney Admission to Practice and Attorneys of Record, and has not obtained local counsel to proceed in this matter. However, in the interest of judicial economy, the court hereby grants, in its discretion, permission for Mr. Press to proceed without local counsel pursuant to Local Rule 83.2(a), and directs that Mr. Press be granted admission *pro hac vice* pursuant to Local Rule 83.1(i), subject to payment of the required fee.

2. The fact statement is taken from the Petition, and the papers filed in relation to the motion to

representative and account manager at Westmoreland from January, 1988 through the fall of 1991. King held a NASD Series 6 license. Westmoreland is a financial planning firm, one of several financial and investment companies owned and operated by Petitioners Joseph Jayson and Judith Jayson. Westmoreland's office, aside from its main business, also maintained other Jayson ventures, including Realmark Properties, which promoted real estate limited partnerships, U.S. Capital Corporation, and U.S. Development Corporation.

Findlay first sought advice from King in the summer of 1988. His liquid assets in September, 1988, held in the form of cash savings, mutual funds, and some common stocks which he had inherited from his father and sister, valued at approximately $272,000. Joyce also sought advice form King in the summer of 1988. His liquid assets in September, 1988 were comprised of eleven common stocks, a mutual fund, and a U.S. Treasury bond, valued at approximately $230,000.

King met with both Findlay and Joyce, whom are not acquainted with each other, separately, at the Westmoreland offices, and proposed similar investment plans to both. As a result of the proposed plans, both Findlay and Joyce liquidated assets and purchased shares in the Oppenheimer Equity Income Fund, and also purchased units of the Jaysons' "Realmark Property Investors Limited Partnership VI," projected to earn tax free income of 5%; Findlay investing $80,000 and Joyce investing $35,000. Findlay and Joyce also transferred funds, in the form of loans, to two start-up corporations promoted by King, the Triad Manufacturing Group ("Triad") and the "Pharmgard Company" in return for 12% interest.

Between November, 1988 and May, 1990, Findlay transferred $96,000 to Triad, along with an additional $26,000 in personal loans to King. Joyce transferred $99,500 to Triad between November, 1988 and November, 1990. On King's advice, the loans were converted to common shares of Triad stock, in association with a private placement offering of Triad stock in September, 1989. Joyce also invested on King's advice, in April of 1990, $20,247.50 into a corporation entitled "M.J. Grass Screw Machine Products Co., Inc." of which King was an officer and shareholder.

King filed a voluntary bankruptcy petition under Chapter 7 on behalf of Triad in September, 1992. M.J. Grass is now allegedly defunct and its stock is worthless. Realmark VI is not liquid, and is also alleged to be unmarketable.

Findlay alleges that, as a result of King's actions, for which Westmoreland and the Jaysons are responsible, he has sustained losses of $212,000 of his principal balance. Joyce similarly alleges that he has sustained losses of $152,247.50 of his principal balance of his investments because of King's actions.

Findlay and Joyce commenced an arbitration proceeding with the NASD on September 27, 1994. Petitioners were served with a Statement of Claim notifying them of the NASD arbitration proceeding in February, 1995. Petitioners answered the Statement of Claim on April 3, 1995, and filed the petition in this action seeking to enjoin the arbitration proceeding on April 20, 1995.

All of the transactions at issue in this action occurred in Buffalo, New York. Westmoreland is a New York corporation, and all of the individual parties are represented to be New York residents, although Joyce was served in Virginia where he is living with his daughter.

Finally, while Findlay and Joyce agreed to retain King, there is no evidence of any executed agreements between the parties, including any agreement to arbitrate any controversies.

### DISCUSSION

On a motion to dismiss pursuant to Fed. R.Civ.P. 12(b), the court looks to the four corners of the complaint and is required to accept plaintiff's allegations as true and to construe those allegations in the light most favorable to the plaintiff. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Dacey v. New York County Lawyers' Association*, 423 F.2d

dismiss and the cross-motion for summary judgment.

188, 191 (2d Cir.1969), *cert. denied,* 398 U.S. 929, 90 S.Ct. 1819, 26 L.Ed.2d 92 (1970). The complaint will be dismissed only if "it appears beyond doubt" that the plaintiff can prove no set of facts which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Goldman v. Belden,* 754 F.2d 1059, 1065 (2d Cir.1985). The court is required to read the complaint with great generosity on a motion to dismiss. *See Yoder v. Orthomolecular Nutrition Institute,* 751 F.2d 555 (2d Cir. 1985).

Respondents contend that the complaint should be dismissed as the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16, does not authorize the court to stay an arbitration, and that the court lacks jurisdiction to enjoin the arbitration on the ground that the arbitration is barred by an applicable statute of limitations or is not timely under Rule 15 of the NASD Code of Arbitration Procedure. Petitioners argue that the court has the power to stay the arbitration, and that Respondents assertion as to the court's authority to enjoin an arbitration under the FAA is incorrect. Further, Petitioners contend that the court may enjoin arbitration proceedings barred by the NASD on the basis that arbitration claims must be commenced within six years from the date of the event giving rise to the dispute, and the one-year/three-year statute of limitations period applicable to the Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq. See Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* 501 U.S. 350, 363–64, 111 S.Ct. 2773, 2782–83, 115 L.Ed.2d 321 (1991).

■ Prior to reaching the merits of the parties' arguments, however, the court finds that it is necessary to determine whether this court has subject matter jurisdiction over this action. In their answer, Respondents asserted that the court did not have subject matter jurisdiction over this action based on either diversity, 28 U.S.C. § 1332, or federal question jurisdiction, 28 U.S.C. § 1331. Respondents then moved, nonetheless, to dismiss this action under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted, rather than Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdic-

tion. The failure of the parties to contest the district court's authority to hear a case "does not act to confer [federal] jurisdiction ... since a challenge to subject matter jurisdiction cannot be waived and may be raised *sua sponte*" by the court. *Alliance of Am. Insurers v. Cuomo,* 854 F.2d 591, 605 (2d Cir. 1988). When jurisdiction is lacking, dismissal is mandatory. *Manway Construction Co. v. Housing Authority of Hartford,* 711 F.2d 501, 503 (2d Cir.1983).

■ The FAA does not provide a basis of federal jurisdiction. *Southland Corp. v. Keating,* 465 U.S. 1, 15 n. 9, 104 S.Ct. 852, 861 n. 9, 79 L.Ed.2d 1 (1984); *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 25 n. 32, 103 S.Ct. 927, 942 n. 32, 74 L.Ed.2d 765 (1983). Before a district court may entertain petitions under the FAA, there must exist an "independent basis of jurisdiction." *Harry Hoffman Printing, Inc. v. Graphic Communications, Int'l. Union, Local 261,* 912 F.2d 608, 611 (2d Cir. 1990). In this case, there is no basis for diversity jurisdiction, as all parties are asserted to be New York residents. Petitioners have argued that jurisdiction exists under federal question jurisdiction, on the basis that all or some of the claims alleged in the underlying lawsuit arise under the Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.*

■ Petitioners contend that federal question jurisdiction is available to the extent that Respondents' arbitration claim seeks to impose liability upon the Jaysons as controlling persons, a principle of liability enunciated in the Securities Exchange Act of 1934, and that, therefore, as Respondents' underlying claim is predicated upon federal law, when coupled with Petitioners' request to enjoin arbitration pursuant to the FAA, federal question jurisdiction in this court is created. The law, however, is contrary to Petitioners' theory.

In *Drexel Burnham Lambert, Inc. v. Valenzuela Bock,* 696 F.Supp. 957 (S.D.N.Y. 1988), the respondents in an arbitration commenced an action in state court seeking to compel the arbitrators to sever the claims before them. The petitioners then removed the action to federal court, asserting that

federal jurisdiction was provided by the Federal Arbitration Act and the subject matter of the arbitration, which arose under the Securities Exchange Act of 1934. *Valenzuela Bock, supra,* at 959. Granting the motion to remand the action to state court, the court found that the FAA did not confer jurisdiction, as despite a literal reading of the FAA which would appear to allow any action relating to any arbitration to which the FAA applies to be brought as an original proceeding in the federal courts, numerous courts had consistently held that the sections of the FAA referring to "United States court" did not confer federal subject matter jurisdiction. *Valenzuela Bock, supra,* at 960–61 (citing cases). Further, the court concluded that if the FAA was construed to provide for a federal forum whenever the underlying dispute involved a federal question, it would be seen as overturning the well-established rule that federal question jurisdiction under 28 U.S.C. § 1331 must be determined on the face of a "well-pleaded" complaint. *Id.,* at 963.

Later, in *Application of Prudential Securities, Inc.,* 795 F.Supp. 657 (S.D.N.Y.1992), in which a securities brokerage firm had filed a petition to stay an NASD arbitration, the court remanded the action to state court, holding that the securities brokerage firm's right to stay the arbitration under the NASD contract and the FAA was "not one of the federally created rights that gives rise to federal question jurisdiction," and that the petitioner's right to relief in state court did not necessarily depend on the resolution of the underlying federal claims asserted by the petitioners as grounds for arbitration. *In re Prudential Securities, Inc., supra,* at 661–662. *See also Merrill Lynch, Pierce, Fenner & Smith v. Shaddock,* 822 F.Supp. 125, 132 (S.D.N.Y.1993) (noting that for the FAA to be enforceable in federal court, there must be an independent basis for subject matter jurisdiction such as diversity as well as a showing of interstate commerce).

In this case, as noted, Petitioners have asserted that federal question jurisdiction exists on the basis that all or some of the claims alleged in the underlying petition arise under the Securities Exchange Act of 1934. However, federal question jurisdiction cannot be found by looking beyond the petition to the underlying claims that are the subject of the arbitration. *Application of Prudential Securities, Inc., supra.* Indeed, Respondents argue that they have not raised claims under the Securities Exchange Act of 1934, and that they seek to hold Petitioners liable under the state common law theory of respondeat superior. Although Respondents' NASD arbitration claim does at one point refer to the Jaysons as controlling persons, Exhibit A to Petition filed April 20, 1995 at p. 5, the claim also casts the Jaysons in vicarious liability based upon an asserted obligation to "supervise and monitor" King as their employee and registered representative. *Id.,* at p. 6. Thus, to allow Petitioners, who are respondents in the arbitration proceeding, to inject Exchange Act theories into these proceedings via a petition seeking relief from arbitration under the FAA, thereby conferring subject matter jurisdiction on this court, would permit Petitioners to accomplish indirectly what they could not achieve directly—creating federal question jurisdiction through the mechanism of a carefully drawn responsive pleading, contrary to established law. *See Valenzuela Bock, supra,* at 964 (stating that "issues of federal law that are injected into a suit by the answer rather than the complaint do not satisfy the requirements of federal question jurisdiction) (citing *Louisville & Nashville Railroad v. Mottley,* 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908)). *See also, e.g., Reed v. Cohen,* 876 F.Supp. 25, 29 (E.D.N.Y.1995) (defendant's assertion that plaintiff's state claim arose under federal securities law was properly characterized as either a counterclaim or a defense and could not serve as a predicate for removal; court also noted that federal securities laws do not preempt state securities laws that incidentally affect interstate commerce). Further, as noted, Respondents' claim for arbitration does not create jurisdiction in this court to adjudicate claims arising under the Exchange Act of 1934. It asserts liability against Petitioners under the NASD Code of Arbitration, and any award will be determined by an arbitrator based upon an evaluation of the evidence presented by Respon-

dents in that proceeding pursuant to the NASD Rules.

Accordingly, the court finds that no independent basis of federal jurisdiction has been raised, and, as such, the court, lacking subject matter jurisdiction over the petition, must dismiss the action.

Even if the court did have subject matter jurisdiction, the court would nevertheless find that this action should be dismissed and that arbitration should be compelled.

■ The FAA authorizes a district court to stay litigation which may relate to a claim of arbitration, however it does not speak as to whether a court has authority to stay an arbitration. 9 U.S.C. § 3. Nonetheless, "this silence does not mean district courts have no such power." *L.F. Rothschild & Co., Inc. v. Katz*, 702 F.Supp. 464, 467 (S.D.N.Y. 1988). In fact, federal courts have clearly stated that, in the appropriate circumstances, an order to stay arbitration is within the power of the district court. *Kelly v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 985 F.2d 1067, 1068–69 (11th Cir.1993) (holding that the district court had the authority to enjoin arbitration); *Tai Ping Insurance Co. v. M/V Warschau*, 731 F.2d 1141, 1144 (5th Cir.1984) (same); *L.F. Rothschild & Co., supra*, at 468 (enjoining parties from proceeding with arbitration); *Jab Industries, Inc. v. Silex S.P.A.*, 601 F.Supp. 971, 979 (S.D.N.Y. 1985) (holding that the district court had the authority to enjoin arbitration). *See also, e.g., Davis v. Skarnulis*, 827 F.Supp. 1305, 1307 (E.D.Mich.1993) (court enjoined parties from proceeding with NASD arbitration pending jurisdictional determinations). Thus, this court finds that, as in the appropriate circumstances, a federal district court has the authority to stay an arbitration proceeding, Respondents' motion to dismiss could not be granted on this basis.

■ However, the NASD Code provides for arbitration of "any dispute, claim or controversy arising out of or in connection with the business of any member...." NASD Code of Arbitration Procedure, part 1, § 1, NASD Manual (CCH) p. 3701 (1986). Section 15 of the NASD Code of Arbitration provides that:

No dispute, claim, or controversy shall be eligible for submission to arbitration under this Code where six (6) years have elapsed from the occurrence or event giving rise to the act or dispute, claim or controversy. This section shall not extend applicable statutes of limitations, nor shall it apply to any case which is directed to arbitration by a court of competent jurisdiction.

NASD Code of Arbitration Procedure, part 3, § 15, NASD Manual (CCH) p. 3715 (1986).

The Second Circuit has not yet considered whether Section 15 of the NASD Code of Arbitration which provides that no dispute is "eligible" for arbitration where six years have elapsed from the occurrence or event giving rise to the dispute is a substantive jurisdictional requirement. However, the Third, Sixth, and Seventh circuits have held that the term "eligible" in Rule 15 means that stale disputes are absolutely barred from arbitration. *PaineWebber v. Hofmann*, 984 F.2d 1372, 1379 (3d Cir.1993); *Roney & Co. v. Kassab*, 981 F.2d 894, 897–900 (6th Cir.1992); *PaineWebber, Inc. v. Farnam*, 870 F.2d 1286, 1292 (7th Cir.1989); *Dean Witter Reynolds v. McCoy*, 853 F.Supp. 1023, 1030 (E.D.Tenn.1994). The court in *PaineWebber, Inc. v. Richardson*, 1995 WL 236722 (S.D.N.Y.1995) went so far as to state that "every federal Court of Appeals to have considered the issue has so determined [that Section 15 is a substantive jurisdictional requirement]," however, that broad statement was disputed by the District Court of Massachusetts. *See PaineWebber, Inc. v. Landay*, 903 F.Supp. 193, 203 (D.Mass.1995).

In the Second Circuit, it has been held that procedural questions, such as the effects upon arbitrability or the merits of a claim in arbitration, of statutes of limitations, unless expressly excluded from arbitrability, should be left to the arbitrators once it has been established that the subject matter of the dispute is arbitrable. *See, e.g., Shearson Lehman Hutton v. Wagoner*, 944 F.2d 114, 121 (2d Cir.1991); *Conticommodity Services v. Philipp & Lion*, 613 F.2d 1222, 1226 (2d Cir.1980). In *Merrill Lynch, Pierce, Fenner & Smith v. Shaddock, supra*, the court held that any limitations defense,

whether stemming from an arbitration agreement, arbitration association rule or state statute rendered applicable by the arbitration agreement, was an issue to be addressed by the arbitrators. *Shaddock, supra*, at 131–32. The court expressly stated that the proposition set forth in the decisions in the Third, Sixth, and Seventh Circuits, that arbitrability and timeliness issues are for the courts, not arbitrators, to decide, ran "directly counter to the rule in [the Second] Circuit requiring timeliness issues to be submitted to arbitration." *Shaddock, supra*, at 136 n. 13. The *Shaddock* court noted, however, that the "eligibility" issue under Section 15 of the NASD, which could bar the arbitration as untimely was not raised by the respondents.

In *PaineWebber, Inc. v. Richardson, supra*, cited by Petitioners, the court distinguished the holdings in *Wagoner* and *Shaddock*, which found that timeliness issues should be submitted to arbitration, on the basis that those cases involved state statute of limitations, rather than the six year limitation period set forth in NASD Section 15. Further, the *Richardson* court cited a recent joint decision by the New York Court of Appeals resolving two pending appeals, *Smith Barney, Harris Upham & Co. v. Luckie and Merrill Lynch, Pierce, Fenner & Smith v. Manhard*, 85 N.Y.2d 193, 623 N.Y.S.2d 800, 805, 647 N.E.2d 1308, 1313 (1995), which found that where the parties to a brokerage contract had inserted a New York choice of law provision, even pure limitations issues were to be decided by the courts rather than by arbitrators. *Richardson, supra*, at *2. The New York Court of Appeals further stated that they were "not persuaded by the *Wagoner* Court's analysis." *Luckie, supra*, 623 N.Y.S.2d at 807, 647 N.E.2d at 1315. In conclusion, the *Richardson* court determined that, as the action was based on diversity, it was "constrained to apply the ruling in *Luckie/Manhard*." *Richardson, supra*, at *2.

This court finds that the *Richardson* case, even if correct in its holding that the applicability of state arbitration law is a substantive question, a matter not entirely free of doubt, see *Shaddock, supra*, at 131–32, is readily distinguishable from the instant case. First, this action is not based on diversity. Second, there is no evidence in this case that there was an agreement between Petitioners and Respondents where the parties designated that New York law should govern any disputes between the parties. In *Goldberg v. Parker*, —— A.D.2d ——, 634 N.Y.S.2d 81 (App.Div. 1st Dep't. 1995), decided after *Luckie/Manhard*, the court held that, "in the absence of an agreement between the broker and the customer wherein the parties designate New York law to govern the agreement and its enforcement, the matter of timeliness of claims under NASD § 15 of the Code of Arbitration is for the arbitrator to decide, not the court." *Parker, supra*, at 81.

Under federal law, there is a strong presumption in favor of arbitrability. *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 941–42, 74 L.Ed.2d 765 (1983). Any doubts as to the arbitrability of particular issues must be resolved in favor of arbitration. *Moses H. Cone Memorial Hosp., supra*, at 24–25, 103 S.Ct. at 941–42; *Wagoner, supra*, at 121. In this case, Petitioners do not contend that Respondents' underlying claims in their request for arbitration are not subject to arbitration under the NASD arbitration rules, rather, they request that the court determine the threshold question of "eligibility" for arbitration based upon NASD Rule 15 purporting to bar from arbitration any claims more than six years old. The court finds that, in the Second Circuit, issues of timeliness have been held to be an issue for the arbitrators. *Wagoner, supra*, at 121. The court further determines that *Luckie/Manhard*, the New York Court of Appeals holding that distinguishes *Wagoner*, and directs that timeliness issues be resolved by the court, is not applicable to this case as there has been no agreement submitted to the court which indicates that New York law is to govern this action.

Accordingly, if the court were to have subject matter jurisdiction, the court would find that the arbitration of the petition submitted to the NASD by Respondents should go forward, with any timeliness issues affecting

eligibility for arbitration to be resolved by the arbitrator.

## CONCLUSION

Based on the foregoing, the court finds that this action should be dismissed for lack of subject matter jurisdiction.

SO ORDERED.